# CHARLESTON.

## WOODS *v.* WARD.

Decided December 21, 1900.

1. COMMISSIONER'S FINDING OF FACTS—*Weight of.*

Where questions purely of fact are referred to a commissioner to be reported on, his findings will be given great weight, and should be sustained unless it plainly appears that they are not warranted by any reasonable view of the evidence; and this rule operates with peculiar force in an appellate court, when such findings have been approved and sustained by the decree of the inferior court. (pp. 661, 662).

2. VERBAL CONTRACT—*Statute of Frauds.*

 T. is the owner in fee of the remainder in a valuable farm, the deed of conveyance of which has been set aside by decree of the circuit court. I. sets up and attempts to prove a parol agreement made between T. and I. whereby, in case I. would join T. in appealing the cause to the supreme court of appeals, and pay one-half of the fees, expenses, and costs thereof, and if they succeeded in reversing the decree and restoring T. to his rights in the land, T., in consideration thereof, was to convey to I. one-half of his interest in the land. I. paid no money, and no part of the fees, expenses or costs. *Held*, that no resulting trust could arise in favor of I., and, further, that, the right of I., being solely dependent on the verbal promise of T., is within the statute of frauds. (pp. 665, 666).

Appeal from Circuit Court, Barbour County.

Bill by Samuel V. Woods against Ira Ward and others. Decree for plaintiff, and Taylor Ward appeals.

*Affirmed.*

W. T. ICE, for appellant.

SAMUEL V. WOODS, DAYTON & DAYTON, M. PECK, and FRED BLUE, for appellee.

MCWHORTER, PRESIDENT:

Samuel V. Woods, trustee, filed his bill in the nature of a creditor's bill, in the circuit court of Barbour County against Ira Ward, Alberta Ward, Taylor Ward, Squire Cronso and others, to enforce the collections of certain trust and other liens against the lands of said Ira Ward. Among the debts so secured by one of the deeds of trust which was dated December 21, 1894, was a debt of six thousand dollars, being a note executed by Ira Ward and Taylor Ward to T. J. Farnsworth for borrowed money, also a debt of one thousand eight hundred and nine dollars and eighty-six cents to Taylor Ward and one of four thousand dollars to Squire Cronso and Taylor Ward jointly, which deed of trust conveyed two tracts of land of said Ira Ward, one containing seven hundred and twelve acres, the other three hundred and twenty-eight acres, both in Barbour County. Taylor Ward answered the bill, averring that on the six thousand dollar note is a credit of one thousand three hundred and sixty dollars as of August 28, 1893, and that said note is in fact the note and debt of Ira Ward and respondent only security of said

Ira Ward in said note, and that the debts secured to respondent in said trust deed are valid and wholly unpaid and justly due respondent. Ira Ward also filed his answer admitting the execution of the deed of trust of December 21, 1894, averring that at that time he was involved in financial differences with his father, A. J. Ward, who had instituted a suit against him for a large sum of money, liability for a large part of which respondent denied; that respondent was security for James A. Williamson, sheriff, and was thereby involved so that he had to raise four thousand dollars, and to raise it said trust deed was executed by the advice, full knowledge and active co-operation of Taylor Ward, and with no attempt whatever to adjust and settle the financial matters at that time existing between them; that the debt of six thousand dollars secured to T. J. Farnsworth was the joint obligation of himself and Taylor Ward, that the money was borrowed by them jointly, that each of them got one-half of it and that the payment of one thousand three hundred and sixty dollars, and of the interest charged in the bill correctly to have been paid was in fact paid solely by respondent, and not one dollar by Taylor Ward; that under the circumstances said Farnsworth should collect one-half of said debt from Taylor, and charges that as Taylor is a man of large means it can be done by a personal decree and execution in the cause upon respondent's prayer for affirmative relief; admits the honesty and validity of the debt to Taylor secured for one thousand eight hundred and nine dollars and eighty-six cents, and other debts secured by said trust deed, and admits the debt of four thousand dollars to Taylor Ward and Cronso jointly to be substantially correct, although not quite so for the reason that the money was borrowed to pay off his liability on the sheriff's bond and after paying such liability a small balance of the four thousand dollars remained, and which small balance was to be paid to respondent by Taylor, but has not in fact been paid, which small balance respondent cannot now give, but reserves the right to prove before commissioner. And sets up further by way of special relief a contract he had with Taylor Ward who had been defending a chancery cause against him by their father, A. J. Ward, for the purpose of cancelling a deed to said Taylor for a valuable farm, known as the "Al. Ward farm," worth some twelve thousand dollars, which A. J. Ward in said suit had succeeded in cancelling by which said Taylor lost the farm; that after the final decree cancelling the deed Taylor

Ward by a distinct contract with respondent, that if he, respondent, would aid him in taking said cause upon appeal to the Supreme Court of Appeals by paying certain costs and counsel fees and executed proper bond with said Taylor to perfect said appeal, and in case said appeal should be fruitless pay one-half the judgment for costs that would be awarded therein, then said Taylor in case of success on such appeal was to give to respondent one-half of the recovery in land or money as the case might be. In accordance with which agreement respondent did execute with Taylor the appeal bond required, employed counsel to prosecute said appeal and fully performed his part of said agreement. The result of said appeal was to reverse the decree, and Taylor was given a fee simple perfect title, subject to the life estate of A. J. Ward for the said farm, which right, interest and title so acquired by said Taylor is reasonably worth twelve thousand dollars and under said agreement said Taylor justly owes respondent at least six thousand dollars or more than enough to pay off and discharge every dollar he owes said Taylor Ward; and prays that inasmuch as this suit is brought in the name of a nominal trustee, largely for the benefit of Taylor Ward, and for the purpose of enforcing his debts, that in this cause a just and proper settlement of the matters in difference between him and Taylor Ward may be made; that before respondent is required to answer for the payment of said Farnsworth debt, that one full half thereof, with its accrued interest, be decreed against said Taylor Ward and collected by execution or otherwise, and that the other half credited with the interest and one thousand three hundred and sixty dollars paid by respondent only be charged against respondent or his estate; that the true amount due on said four thousand dollars be ascertained; that the contract in reference to said appeal be enforced, the value of respondent's half of the money be ascertained and the half of the said four thousand dollars debt due to Taylor and said one thousand eight hundred and nine dollars and eighty-six cents due to him be set off against the amount due from him to respondent under said contract, and he be decreed to pay respondent the balance and for general relief; and denies that he is or has at any time been involved to the extent of insolvency, or that there is now any liability on respondent to any amount, at least upon him as such surety for Williamson. Taylor Ward replied generally to all matters of the answer

of Ira Ward except those matters in which he seeks affirmative relief, and filed a special replication thereto. Denied being a joint maker of the Farnsworth note for six thousand dollars, and the right of Ira to have one-half of said debt charged against him, or that there was any balance remaining due Ira on account of the James A. Williamson liability; expressly denied the right of said Ira Ward to have any set-offs against him for the amounts claimed in his answer; denied that said Ira Ward had any just claim or set-off against him on account of the affirmative matter set up in his answer. Admitted that he had a chancery. suit in the circuit court of said county with Aquila J. Ward in which replicant was defendant, that in said circuit court a decree was rendered against him cancelling a deed to a certain tract of land containing about three hundred acres known as the "Al. Ward farm," and further admits that after said final decree he took said cause to the Supreme Court of Appeals, and succeeded in having said decree reversed. He expressly denied that he ever had a contract with Ira Ward by which he had any interest whatever in said chancery cause or the proceeds thereof, or that Ira ever furnished him any assistance whatever by payment of costs or expenses in taking said cause to the court of appeals; denied each and every allegation of said answer which attempted to charge him with any of the proceeds of said chancery cause or any of the land procured thereby, or that Ira Ward had any rights or interests therein, either in said land or in the proceeds of the sale, and denied the right of Ira to have such a pretended contract as alleged in his said answer enforced in this Honorable Court, and expressly relied on and claimed the benefit of the statute of frauds in such case made and provided, and prayed to have his just demands against said Ira Ward decreed to him. The pleadings are all verified. On the 26th of February, 1897, the cause was referred to commissioner George M. Kittle, to ascertain and report the real estate owned by Ira Ward, the location and annual rental value thereof, the liens thereon and to whom owing. To report the aggregate amount of indebtedness he owed on the 12th day of June, 1894, and the value of his estate at that time, and the same facts as of December 21, 1894, whether any of the debts he now owes were debts created for the discharge of indebtedness which existed prior to the 12th day of June, or the 21st day of December, 1894, what amount of indebtedness or liability was incurred by the said Ward as one of the sureties of

James A. Williamson, what part thereof has been paid by him and how the same was paid, and whether said Ira Ward was solvent or insolvent on the 21st day of December, 1894, and any other matter deemed pertinent by him or required by the parties to be stated. The comissioner filed his report to which Ira Ward entered four exceptions as follows:

"First. Because the said commissioner has not reported that one-half of the trust debt due to T. J. Farnsworth, originally of six hundred dollars, with interest thereon from October 28, 1890, as the debt of Taylor Ward, and because said commissioner failed to report the said debt originally of six thousand dollars as the joint debt of Taylor and Ira Ward, and because he has not reported that in the event that the land of exceptor is made liable and sold for the payment of the whole of said Farnsworth debt, that then and in that event exceptor is entitled to contribution from said Taylor Ward for one-half of said original debt, or three thousand dollars, with interest thereon from the said 28th day of October, 1890, which should be properly applied in extinguishment of exceptor's indebtedness to said Taylor Ward so far as necessary, and the residue decreed to exceptor against said Taylor Ward.

"Second. Because the commissioner has failed to make a settlement of the partnership accounts of exceptor and Taylor Ward, and has failed to allow to exceptor in payment of his indebtedness to Taylor Ward and as a right of recovery against Taylor Ward one-half of the recovery had by Taylor Ward and exceptor in the chancery cause of Aquilla Ward against Taylor Ward in the Supreme Court of Appeals of this State, to-wit, four thousand sixty-four dollars and seven cents, being one-half of the value of the "Al Ward farm," recovered in said suit, less the life estate of Acquilla Ward therein, as ascertained by said commissioner.

"Third. Because said commissioner has ascertained the value of said "Al Ward farm" to be twenty-five dollars per acre, when the evidence shows that the same is in fact worth from thirty dollars to thirty-five dollars per acre.

"Fourth. Because said commissioner has failed to credit the two debts of S. V. Woods, as reported, of two thousand three hundred and eighty-four dollars and thirty-six cents and three hundred and five dollars and seventy-one cents against exceptor and Wm. Hall with the sum of one thousand eight dollars and

twenty-nine cents as of the 5th day of March, 1898, of the Christ-lip money, collected by said Woods for exceptor, and applied by said Woods upon indebtedness of J. A. Williamson, late sheriff of the county, to said Woods, as follows: seven hundred and ninety-six dollars and ninety-six cents upon the judgment of said Williamson against T. P. R. Brown, J. N. B. Crim; sixty-three dollars and ninety-five cents, the J. F. Robinson debt, and one hundred and forty-eight dollars and twenty-eight cents, the W. P. Scott judgment, which said application was made without authority of law and without the authority of exceptor and against his instructions, and because, as is shown by the evidence, at least five hundred dollars of the Crim and Brown money was paid to said Woods on the first day of January, 1894, by H. J. Thompson for said Williamson."

And Taylor Ward excepted as follows:

"The defendant, Taylor Ward, excepts to the report of commissioner G. M. Kittle filed herein at this term of the court, because said commissioner finds that there is still due from the defendant, Taylor Ward, to his co-defendant, Ira Ward, the sum of two hundred and sixty dollars and seventy-two cents on his one-half of the four thousand dollar note executed to said Taylor Ward, and Squire Cronso, December 21, 1894, and secured in the deed of trust executed to said Woods, trustee, on that date, when in truth and in fact, as fully appears by the evidence in the cause, defendant, Taylor Ward, fully paid his two thousand dollars being his half of the consideration money on said four thousand dollar note and all that was due from him to said Ira Ward."

There were a large number of depositions taken and filed in the cause, both for Ira Ward and Taylor Ward, and on the 8th day of June the cause was heard among other things upon the report of the commissioner and the four exceptions thereto of Ira Ward and the one exception of Taylor Ward, when the court overruled the the exceptions of Taylor Ward, and sustained the first exception of Ira Ward in respect to the T. J. Farnsworth debt of six thousand dollars, and overruled the second, third and fourth exceptions of said Ira Ward and confirmed the report of the commissioner as modified by said rulings of the court and decreed accordingly that the Farnsworth debt was a joint debt of Ira and Taylor Ward, and based the decree upon the said re-

port as amended and confirmed. From this decree the said Taylor Ward appealed, and assigned the following errors:

"First. The court erred in holding that your petitioner and the said Ira Ward, as between themselves, were joint makers of the debt decreed to the defendant, Thomas J. Farnsworth.

Second. It was error to decree that your petitioner should be held liable to the said Ira Ward for one-half of the said Farnsworth debt, in the event that the said Ira Ward's real estate was taken for the payment of said debt.

Third. The court erred in not holding that the debt ascertained to be due to said Farnsworth was the individual liability and debt of the said Ira Ward, and that your petitioner was only the security therein.

Fourth. It was error for the court to overrule the exception of your petitioner to said commissioner's report and decree as a credit on the liens ascertained to be due to your petitioner the sum of three hundred and fourteen dollars and twenty-one cents, as ascertained and reported in said commissioner's report.

Fifth. It was error for the court in its decree to substitute the said Ira Ward to one-half of the Farnsworth debt as against your petitioner."

And appellee Ira Ward assigns a cross error in that the court by its decree failed to set off, pay and discharge the amount of money owing from Ira Ward to Taylor Ward by the amount from Tyalor Ward to Ira Ward, arising from the agreement about the appeal of the chancery cause of Aquila Ward against Taylor Ward involving the Al. Ward farm, which cross assignment rests upon the overruling of the second exception of Ira Ward to the commissioner's report. The first, second, third and fifth assignments of appellant will be treated together, as they all relate to the transaction with T. J. Farnsworth in borrowing from him the six thousand dollars, and is purely a question of fact as to whether the money was borrowed by both and the note a joint note or whether Taylor Ward stands only in the relation of surety to Ira Ward. There is a great deal of testimony taken on this point, and very conflicting. The two Wards contradict each other flatly, Ira testifying that they borrowed it together, were equally liable for its payment, that each received one-half of it for his own use, while Taylor testifies that he got none of it, except that he borrowed from Ira one thousand dollars of the money, gave his note to Ira for it, and afterward paid the note

in 1891, and files the note in evidence with his deposition, a due bill wholly in his own handwriting, which he admits, with the word "paid" written across the face of it, which word he will not say is or is not also in his handwriting, says he cannot be sure about it. On the other hand Ira testifies that he never had the note, never saw it until it is produced by Taylor when giving his deposition, and that Taylor never gave him such a note. Many conversations are proved, had by different persons with Taylor Ward tending to show that he frequently said that he and Ira had borrowed the money together. T. J. Farnsworth, from whom the money was borrowed, says his recollection is that Taylor Ward first came to him about borrowing the money, afterwards they both came together, that he understood they were borrowing together, says he asked the two brothers to whom he should give the check, and they answered "it made no difference, either one of them or both," that he then drew the check in favor of Ira Ward, and stated that it would be easier for one to sign and draw the money than for both of them at the bank, and they said all right or something to that purport. "I then remarked that it was a large sum of money to draw out of the bank without some notice to the cashier; that I would go up to the bank in a few minutes myself, and I did go up to the bank, and they said it was all right, they had got the money, and Mr. Taylor Ward said that he wouldn't need a part of the money at that time; that he was going in the back counties to either get some cattle or look after cattle and wouldn't need the money before he returned; that he would have money enough with him to meet his immediate wants, and my recollection is that he took me to one side, and said that he was only going to use one thousand dollars of this money, but he would stand good with Ira for the amount of the note; that they were borrowing it together, and I find by examining the bank books, of which I am a director, that Taylor Ward deposited one thousand dollars at that time. Taylor Ward admitted to me that he received one thousand dollars, but I do not know how they divided the money they received from the bank." He says he regarded them both as principals. It is true some circumstances would indicate that it was regarded as the debt of Ira Ward, as he made such payments as were made in the way of interest, and a payment of something over a thousand dollars on the principal, while Taylor made no payments. Squire Cronso testifies that it was his

"understanding that it was Ira was the principal and Taylor was the security, but I don't know certain about that," and says that he got the understanding from Taylor himself, which of course could not bind Ira. A careful examination of all the evidence on this point shows that while it is very conflicting, the preponderance is that it was a joint transaction, certainly sufficient to sustain the decree of the court, and is of such a character that he appellate court is not warranted in reversing the circuit court. *Smith* v. *Yoke*, 27 W. Va. 639; *Bartlett* v. *Cleavenger*, 35 W. Va. 720, (14 S. E. 273) ; *Richardson* v. *Ralphsnyder*, 40 W. Va. 15 ; and many others since.

As to appellant's fourth assignment, based upon the exception of Taylor Ward to the commissioner's report, touching the payment by Taylor to Ira Ward of balance of two hundred and sixty dollars and seventy-two cents balance of four thousand dollars, Ira had given his note to Taylor Ward and Squire Cronso for that amount and secured its payment in the deed of trust of December 21, 1894. The payees in said note were to settle the liability of said Ira as surety on J. A. Williamson's bond as sheriff, estimated to be about four thousand dollars. Squire Cronso paid such liability which amounted to three thousand seven hundred and thirty-nine dollars and twenty-eight cents, leaving a balance of two hundred and sixty dollars and seventy-two cents, which Taylor Ward was to pay to Ira Ward as the residue of the four thousand dollars for which he had given his note. Taylor contends it was paid to Ira, and the latter contends it was never paid. At the time Ira executed the note for four thousand dollars, December 21, 1894, Taylor Ward and Squire Cronso gave him a receipt for the note showing that in consideration of the note to them they were to pay that amount on Ira's liability as surety for Williamson. An endorsement on the back of said receipt showed the payment of the three thousand seven hundred and thirty-nine dollars and twenty-eight cents on account of it, and with Taylor's testimony he filed the receipt with the endorsement, with the additional endorsement, "Received in cattle one hundred and ninety-three dollars and sixty-eight cents balance on check, seventy-one dollars and sixty-six cents—two hundred and sixty-five dollars and thirty-four cents," which added to the payment of Cronso makes four thousand and four dollars and sixty-two cents, an overpayment of four dollars and sixty-two cents. The endorsement of the two

items of one hundred and ninety-three dollars and sixty-eight cents and seventy-one dollars and sixty-six cents on said receipt is in the handwriting of Taylor Ward, who stated that he had paid the one hundred and ninety-three dollars and sixty-eight cents in cattle. Ira states that he paid for the cattle in a note he held for two hundred dollars and interest, which he turned over to Taylor on David McClung. Taylor admits he got the McClung note and took it to McClung and put it as part payment into some cattle he had bought from him, but claims that it was given to him by Ira on account of his half of a one thousand dollar note they owed together in bank at Clarksburg, and also that the balance of check for seventy-one dollars and sixty-six cents was a part of the Clarksburg debt and charged to Ira on the account of the balance due from him to Ira on the four thousand dollar deal. He denies having a settlement with Ira on the 21st of September, 1894, or that W. H. Wentz made a settlement between them when there was found due from Ira to him the sum of three hundred and seventy dollars, which Ira then paid, which included the Clarksburg check for four hundred and eighty-five dollars, representing Ira's half of the one thousand dollar debt and of which the seventy-one dollars and sixty-six cents is claimed by Taylor to be the balance. Wentz corroborates Ira, and states that he did make such settlement, and Ira paid Taylor the three hundred and seventy dollars in money, through witness, who counted the money. In *Moore* v. *Ligon,* 30 W. Va. 147, (syl. pt. 7), it is held: "Where questions purely of fact are referred to a commissioner to be reported on, his findings will be given great weight, and should be sustained unless it plainly appears that they are not warranted by any reasonable view of the evidence; and this rule operates with peculiar force in an appellate court, when the findings of the commissioner have been approved and sustained by the decree of the inferior court." *Handy* v. *Scott,* 26 W. Va. 710; *Boyd* v. *Gunnison,* 14 W. Va. 1; *Graham* v. *Graham,* 21 W. Va. 698.

Appellee's cross-assignment of error is based on his second exception to commissioner's report, that the commissioner failed to make a settlement of the partnership accounts between Ira and Taylor Ward, and to allow Ira in payment of his indebtedness to Taylor and a right of recovery against Taylor one-half of the recovery had by Taylor Ward and the exceptor in the chancery

ca..se of Aquilla Ward against Taylor Ward in the Supreme Court of Appeals, to-wit, four thousand sixty-four dollars and seven cents, being one-half of the value of the Al. Ward farm recovered in said suit, less the life estate of Acquilla Ward therein as ascertained by the commissioner. There was considerable testimony taken by both parties on this point as to whether there was a contract in relation to the matter, and the testimony conflicting, Ira contending that there was such contract and Taylor that there was not. It is not claimed that there was any writing to that effect. It seems that the appeal was decided in December, 1895, and on the 3d of February, 1896, Ira Ward took to Taylor an agreement in writing which he had had prepared and asked Taylor to sign, to the effect "that in consideration that Ira Ward would repay to Taylor Ward one-half of all attorney's fees and all other costs which Taylor might have incurred in said suit in the circuit court and the Supreme Court, that Taylor was to convey to Ira Ward one full half of whatever interest Taylor Ward had in said land under said deed. If Taylor Ward took nothing under said deed, then Ira Ward was to lose half of Taylor's expense; if he prevailed then he was to get half of whatever interest in the land Taylor got, and if Taylor gets the costs back, then Ira Ward is to have an equal benefit of what is so recovered." This Taylor refused to do. A re-hearing was allowed in the cause and it was not finally decided until December 16, 1896. Appellee assumes that the contract is proved and proceeds to erect thereon a partnership between Ira and Taylor, although the pleadings do not anywhere set up such partnership or intimate any such thing. Appellee testifies that there was an agreement, but according to his own testimony it was vague and uncertain as to the part to be performed by himself. He says, "My brother come to me and told me that he had a notion to give up the suit and let my father have it, and I told him that I wouldn't do it. I would law it on through and see the end of it. He told me that if I would go in with him that I could have half the proceeds or half the gain, whatever was made or whatever was lost. I was to lose half the loss." He says there was never a memorandum in writing setting out the agreement between them, but there was one prepared by attorney Samuel V. Woods, and witness took it to Taylor and left it at his house for him to sign it. Ira does not claim to have ever paid any part of the costs or expenses. He did propose to arrange for

or pay the fee of the clerk of the circuit court for getting out
the record, but Taylor paid it.   After the Supreme Court had
handed down an opinion favorable to Taylor, Ira thought it was
time to have a contract that would speak for itself, so he had one
prepared and took it to Taylor, who refused to sign it, and in
his special replication to the answer of Ira Ward, Taylor denies
pointedly that he ever had a contract with Ira by which he had
any interest whatever in said chancery suit or the proceeds
thereof.   Taylor admits in his testimony that he made to Ira at
one time a proposition to take an interest in the matter with him,
and he said he would, but did nothing, he paid nothing on the
fees or expenses.   Appellee in his brief says "the contract must
be upheld if possible," and cites Beach on Modern Law of Con-
tracts, s. 709, and Bishop on Contracts, and *Schreffler* v. *Nadel-
hoffer,* 23 Am. St. Rep. 626, and *Cravens* v. *Cot. Mills,* 16 *Id.*
298, as to construction of contracts.   The difficulty here with the
appellee is to establish the fact of the existence of a contract
outside of the testimony of the parties themselves, which is pre-
cisely opposite to each other as to the facts.   There is nothing
tending to prove there was a contract except some conversations
which are general and uncertain.   "A partnership as between the
parties themselves is a voluntary contract between two or more
persons for joining together their money, goods, labor, or any
or all of them, under an understanding that there shall be a
communion of profits between them and for carrying on a legal
business."   "A partnership among the parties themselves results
from the intention of the parties, to be gathered from the con-
tract or from their relations to and dealings with the property of
each other."   Syl. points 1 and 2, *Setzer* v. *Beale,* 19 W. Va. 274;
*Chapline* v. *Conant,* 3 W. Va. 507.   "In every partnership there
is a community of interest, but every community of interest does
not create a partnership.   There must be a joint ownership of
the partnership funds or a joint right of control over them, and
also an agreement to share the profits and losses arising there-
from."   *Sodiker* v. *Applegate,* 24 W. Va. 411.   The appellee
never contributed a single dollar toward the payment of fees,
costs or expenses, never did anything except go on the appeal
bond as surety, and never seemed to take any special interest in
the matter until the decision was first handed down and he saw
some probability of success.   Then he goes to appellant and
seeks a contract with him, goes prepared with a written contract

for appellant to sign.   Appellee seems to have the idea that if he can establish the contract and then resolve it into a contract of partnership, he can avoid the statute of frauds, that our statute of frauds in regard to real estate only extends to "Sales and Leases," that this is neither a contract of sale or of lease.   The only definite information we have in the record of what the contract was supposed to be, is found in the written contract presented by Ira Ward to Taylor Ward for his signature, after the decision of the case, which Taylor refused to sign, and to which he never gave his assent, and that contract provides that in consideration of what Ira was to pay as set out in said paper, Taylor Ward was to convey to Ira Ward one full half of whatever interest Taylor Ward had in said land under said deed. Taylor Ward had fee simple remainder of the land under the deed, overshadowed only by the erroneous decree setting aside the deed.   This would have been, if executed, a contract of sale of said land, conditioned only upon the vendor holding the same under his title.   It is insisted that appellant holds the one undivided one-half interest in the remainder in fee in said Al. Ward farm, in trust for appellee, that a resulting trust was created. While this may be done by parol evidence, if such evidence is of such a character as to make it show clearly the intention of the parties, and that the acts of one of them were performed for the purpose of inuring to the benefit of the other.   What did Ira Ward do to entitle him to an interest in the Al. Ward farm?  He paid no money, either in fees, costs or other expenses, the title to the land was already vested in Taylor Ward in fee as to the remainder, and where is the consideration to entitle said Ira Ward to an interest in it?  This is not a purchase of the land in the name of Taylor with the means or funds of Ira Ward. "There must be an actual payment from a man's own money, or what is equivalent to payment from his own money to create a resulting trust."  1 Perry on Trusts, s. 133 and cases cited.  In *Hackery* v. *Butts,* 41 Ark. 395, it is held that "when A. contracts by parol to purchase land for B., but afterwards purchases for himself, B. paying none of the consideration, no trust results in B.   It is a mere violation of a parol agreement, for which equity will not decree A. a trustee for B."   In case at bar appellee paid no money, had nothing invested in the land.   In *Phelps* v. *Seeley,* 22 Grat. 573, it is held that, "A resulting trust may be set up by parol testimony against the letter of the deed,

and a deed absolute on its face may, by like testimony be proved to be only a mortgage. But the testimony to produce these results must, in each case, be clear and unquestionble. Vague, and indefinite declarations and admissions long after the fact, have always been regarded with good reason as unsatisfactory and insufficient." *Joyd* v. *McLean,* 1. John. Chy. (N. Y.) 582; *Shaffer* v. *Fetty,* 30 W. Va. 248; *Currence* v. *Ward,* 43 W. Va. 367. If an agent buys land for his principal and takes title in his own name, and pays the price out of his own funds, no resulting trust can arise since there is no payment by the principal on which the right of the latter can rest, but that right is solely dependent on the verbal promise of the agent, which is within the statute of frauds. 10 Am. & E. E. L. (1st Ed.) 11 and cases cited. The evidence seems to fully support the report of the commissioner on this point and the circuit court having confirmed the report, the decree should not be disturbed. As to the appellee's fourth exception, appellee makes no mention of it in his brief, and it is a question of fact as to the application of certain funds about which there is some conflict of testimony, and the finding of the commissioner is confirmed by the court, and must therefore stand. I see no error in the decree, and the same should be affirmed, with costs and damages to the appellee, Ira Ward, against Taylo Ward.

*Affirmed.*