# CHARLESTON.

## ALLEN & COMPANY v. MAXWELL.

Submitted June 16, 1904—Decided November 16, 1904.

1. SYLLABI APPROVED.
   Syllabus, point 3, *Reger* v. *O'Neal,* 33 W. V. 159; Syllabus point 3, *Fry* v. *Feamster,* 56 W. V. 454; and point 1 of Syllabus, *Wood* v. *Ward,* 48 W. Va. 652, reaffirmed and applied. (p. 236).

2.   ENDORSER.—*To What Extent Liable.*

M. was endorser for the firm of S. B. & Co. of which firm L. was a member. Said firm as well as L. individually became insolvent, and M. being required as such endorser to pay near $2,000, and not being able to raise all the money for the purpose himself, L. loaned him $805, for which M. executed to L. the following writing: "805—Due W. H. Lipscomb eight hundred and five dollars, borrowed money, to be repaid when collected off of Stone, Bowman & Co., out of drafts which I have had to pay for them. This March 9th, 1888. Witness my hand and seal. W. B. Maxwell, (seal)." M. recovered a decree against S. B. & Co. August 2, 1890-for $956.06 interest and costs. *Held:* M. could only be held liable to L. or his assignee, upon said note to the extent of his actual collections from said S. B. & Co.   (p. 241).

3.   APPEAL—*From Specific Parts of Decree.*

Where a party takes an appeal from specified parts of a decree, giving notice to all parties to the suit, that he will only have such parts of the record copied into the transcript as will present to the appellate court such matters so specified as he desires to have reviewed, and that it is not his purpose or intention to appeal from any other part of the decree; the appellate court will not consider an assignment of error by one of the appellees long after the submission of the cause, concerning another part of the final decree, and having no relation to the parts of the decree appealed from.   (p. 241).

4.   APPEAL—*When Does not Bring up Whole Decree for Review.*

When an appeal is taken from specified parts of a decree set out in a written notice which states that no other part of the decree will be appealed from by the appellant, and such specified parts are independent and involve only the rights of the appellees named in such specified parts of the decree, such appeal does not bring up for adjudication the whole decree.   (p. 242).

Appeal from Circuit Court, Tucker County.

Bill by W. & T. Allen & Co. against W. B. Maxwell and others. Decree for plaintiffs, and defendants appeal.

*Reversed in part.*

C. O. STRIEBY, for appellants.

W. G. CONLEY and W. T. ICE, JR., for appellees.

MCWHORTER, JUDGE:

W. & T. Allen & Company at the May rules, 1899, filed their

bill in the circuit court of Tucker county against W. B. Maxwell, C. O. Strieby, trustee, John J. Adams and others, creditors of W. B. Maxwell, alleging that for many years they had been engaged in the wholesale clothing business in Philadelphia, and had sold goods to one, W. H. Lipscomb, who was engaged in the mercantile business at St. George, Tucker county; that said Lipscomb became largely indebted to plaintiffs and numerous other criditors; that in April, 1888, he made an assignment of his property to the defendant, Maxwell, as trustee for the benefit of all his creditors; that Maxwell proceeded to act under said deed of assignment, and collected from the property so coming into his hands and possession, sums of money largely in excess of the amount necessary to pay the entire indebtedness of said Lipscomb; that a suit was instituted in said Tucker county circuit court by the W. H. Smith Hardware Company against said Lipscomb and others for the purpose of settling the accounts of said Maxwell as such trustee; that orders of reference were had and executed therein and among other things it was ascertained and decreed that there was due plaintiffs the sum of $361.41, with interest from the 23rd day of November, 1897, until paid, which said Maxwell was directed therein to pay, and which he had failed to pay, and plaintiffs were advised the same was a lien on the said Maxwell's estate from the date of the decree, and making said cause of the W. H. Smith Hardware Company against Lipscomb and others part of their said suit; that Maxwell never gave bond as trustee and therefore plaintiffs were compelled to look to him personally for the payment of the claim; that Maxwell was largely indebted to other creditors who were made parties to the suit as far as known; that on the —— day of April, 1899, said Maxwell made a general assignment of all his property, both real and personal to one C. O. Strieby, trustee, requiring in said deed said trustee to give bond in the penalty of $10,000.00 before taking possession of the said property, and praying that the cause be referred to a commissioner of the court to ascertain the property, real and personal, owned by said Maxwell, and liens against the same, to whom owing, the amount and priorities thereof, and to settle the accounts of C. O. Strieby, trustee, and for the appointment of a special receiver to take charge of said property, and that the court direct him to proceed with the said property in such manner as would best sub-

serve the interests of all persons concerned therein, and asking
that the creditors named and all other persons interested in the
estate of Maxwell, who would come in and contribute to the costs
of the suit, be made parties and for general relief; exhibiting
with their bill, the deed of trust made by Maxwell to Strieby,
trustee.   The defendants, Maxwell, and Strieby, C. H. Maxwell
and W. H. Lipscomb filed their several answers, to which general
replications were entered.   On the 16th of June, 1899, the cause
was heard upon the bill and answers and replications thereto,
when the court decreed that the trust estate should be disposed
of as speedily as possible, and by consent of parties authorized
and directed C. O. Strieby to dispose of the property with the
least possible delay in pursuance of and under the deed of trust
of April 3rd, 1899, and hold the funds arising therefrom sub-
ject to the further order of the court and referred the cause to
Jef. Lipscomb, one of the commissioners of the court, who was
directed to ascertain and report the estate theretofore owned by
W. B. Maxwell, and conveyed to trustee Strieby, the character
and nature of the title thereto, the liens thereon, their character,
amounts, priorities, and to whom owing, and to state the ac-
counts of the said Strieby, trustee, so far as they had progressed
at the time of the completion of said report, etc.   The commis-
sioner filed his report dated the 10th day of November, 1899,
to which report the defendant, W. B. Maxwell, filed seventeen
exceptions, and the defendant C. O. Strieby, filed three excep-
tions thereto, the third of which exceptions adopted each and
every exception made by W. B. Maxwell. On the 21st day of
June, 1900, the cause was heard upon the papers, proceedings,
and decrees theretofore filed, had, and entered, and upon the
report and exceptions thereto, when the court overruled all the
exceptions except the 15th exception of the defendant, Maxwell,
and as to one item mentioned in the 7th exception of said Max-
well, which were sustained, and the commissioner's report con-
firmed in all other respects except "As to the item of $833.10
reported as due G. F. Phillips, next friend of Ann E. Phillips,
all questions relating thereto being reserved for the future order
of the court therein, and as are also reserved all questions per-
taining to the lands purchased by the said W. B. Maxwell, and
C. W. Minear jointly at tax sales, and for which no settlement
has yet been made, and which were not at the time of filing of

the report of commissioner Lipscomb, in a condition to settle," and the court proceeding to ascertain the rights of parties, decreed among other things that there was due C. W. Minear $317.30; C. H. Maxwell $2,728.42, subject to the credit of a note by C. H. Maxwell, executed to W. B. Maxwell, dated the 15th day of December, 1891, for the sum of $52.50; Mary C. Cameron's heirs, $128.02; A. J. Lipscomb, $563.11." These are the only claims contested here in this cause by the appellant, Strieby, trustee. The 5th exception taken by defendant, W. B. Maxwell, and the trustee Strieby to the report of the commissioner, is the allowance of the claim of $317.30, and claimed to be erroneously carried into the decree in favor of C. W. Minear without a settlement therewith of the amount overpaid to said Minear, the said $317.30 being only Minear's side of the account. On the 16th of October, 1899, W. B. Maxwell and C. W. Minear had a partial settlement and made a statement thereof in writing, signed by both of them, wherein they say: "Balance due C. W. Minear, $317.30, which is to be allowed by Jeff Lipscomb, com'r in the case of *W. & T. Allen & Co.* v. *W. B. Maxwell*. In this settlement we did not include the W. H. Lipscomb matter in controversy, or the matters in difference relative to land bought for taxes, mentioned in the 8th and 9th items of the answer of said Maxwell filed before the commissioner in said case, and said matters are left open for settlement." Item 8 referred to the amount overpaid by mistake in the case of W. H. Smith Hardware Company v. W. H. Lipscomb, June 26th, 1895, about $600.00, and the 9th item to one-third profits made on delinquent land purchased 1895, about $300.00. The overpayment to Minear is recognized in the decree entered on the 23rd of November, 1897, in the case of W. H. Smith Hardware Company v. W. H. Lipscomb, and the right reserved therein to the said Maxwell to recover back from Minear any amount so improperly paid to him. Commissioner Lipscomb, in making up his report, leaves wholly unsettled between said Maxwell and Minear the matters of difference in the 8th and 9th items mentioned. The answer of Maxwell, alleging the partnership of Minear, Hamilton, and himself for the purchase of delinquent lands, and as such partners they did invest a considerable amount of money in the purchase of lands at tax sales, and that Minear afterwards purchased the interest of Hamilton, thereby

giving him two-thirds and Maxwell one-third, and that Minear held the funds of the co-partnership, and from which Maxwell had never received anything, and the answer of Maxwell on this matter was not traversed, and Maxwell's testimony supports this answer. In his testimony, W. B. Maxwell makes the following statement: "C. W. Minear debt, claiming the sum of $555.02. On yesterday Mr. Minear and myself, by the consent of C. O. Strieby, trustee, took up all the matters of account between us, except the 8th and 9th items of my account of offsets. The 8th item, being for $600 charged as amount overpaid to said Minear in the case of W. H. Smith Hardware Company against W. H. Lipscomb, &c., and the 9th item, being a charge for $300 for one-third the profits on delinquent land purachesd in 1895—Mr. Minear and myself did not attempt to settle these two items. He was not willing to settle the 8th item and upon looking over matters between us relative to the 9th item I concluded it was not proper for me to settle same. I found that Mr. Minear had in his hands somewhere about $400 of the proceeds of sales of lands acquired at the tax purchase of which one-third is due to myself and the remainder to Mr. Minear and Mr. John Hamliton. I also found that there are a number of the parcels of land purchased by us which were not redeemed, and which I think, roughly estimating the value of the same, are worth somewhere from $600 to $1,000, and I left the whole matter to be settled by the trustee. One-third of this land which has not been disposed of is mine. Mr. Minear said to me that he had received sufficient money to satisfy all partnership liability, so that the money in his hands and notes and the lands yet on hand are practically subject to a division among the parties, except that there are some unpaid taxes against the land. Mr. Minear and myself made a note in writing and signed it showing that as to the matters settled, there is a balance due him as of yesterday of $317.30. Included in the matters settled is a note of J. W. Minear of $50 and a note of his own of $55, which are in the hands of Mr. Strieby, trustee, and are to be given up and cancelled. I now file the memorandum made by Mr. Minear and myself on yesterday, marked Exhibit 'C. W. M.' As I stated we did not attempt to settle the 8th item of my account, and I now refer to the final decree entered in the case of *W. H. Smith Hardware Company* v. *W. H. Lipscomb, &c.*, as showing

my claim in this matter, and request the com'r to procure and file a copy of that decree as part of his report." The overpayment by Maxwell to Minear is clearly shown from the commissioners' confirmed reports in the case of W. H. Smith Hardware Company against Lipscomb, made a part of the record here, from which it appears that the total amount which passed into the hands of Maxwell, trustee, was $5,745.24; his disbursements, $3,531.73 which includes the $1,722.94 paid to Minear, and without which the disbursements amount to $1,808.79. A supplemental report made June 24, 1897, and which was unexcepted to and confirmed by the decree of November 23, 1897, in case of W. H. Smith Hardware Company against Lipscomb, shows further disbursements by said Maxwell, trustee, to the amount of $688.56, and also reports further claims against said fund to amount of $2,111.44; making a total of $4,608.79, which deducted from the receipts, $5,745.24, leaves the sum of $1,136.45, the true amount which should have been paid to Minear on the Lipscomb order to pay Minear any surplus after paying the creditors of Lipscomb, being an overpayment of $586.49. Why this overpayment was not carried into the account between Maxwell and Minear by the commissioner and also into the decree does not appear, but the right was reserved to trustee, Maxwell, in case of *W. H. Smith Hardware Company* v. *Lipscomb* to recover back from Minear any amount improperly paid to him. This overpayment of $586.49, with interest from June 27, 1895, the date of its payment, would have cancelled the claim of $317.30 decreed to Minear, and left the difference which should have been decreed against Minear, for the benefit of the creditors of Maxwell in this suit. Maxwell testifies that no part of said overpayment had ever been repaid to him by Minear. The decree in favor of C. W. Minear for the sum of $317.30 is reversed, set aside, and annulled, and this Court proceeding to enter such decree in that behalf as the circuit court should have rendered, do adjudge, order, and decree that C. W. Minear do pay to the trustee of W. B. Maxwell, for the purposes of said trust, the sum of $586.49, the amount overpaid him as assignee of W. H. Lipscomb by W. B. Maxwell, with interest thereon from June 25, 1895, until paid, subject to credit of $317.30 as of November 19, 1899. The questions pertaining to the lands purchased by W. B. Maxwell and Minear jointly at tax sales, and for which no settlement had been made, being reserved

by the circuit court.  The sixth exception to the commissioner's report that "The unsettled matters between said Maxwell and said Minear, relative to lands purchased for taxes are neither settled by the commissioners or reserved, so that the same can be settled in the future."  The decree of June 21, 1900, complained of, after mentioning certain questions and matters reserved says: "As are also reserved all questions pertaining to the lands purchased by said W. B. Maxwell and C. W. Minear jointly at tax sales, and for which no settlement has yet been made, and which were not, at the time of filing of the report of commissioner Lipscomb, in a condition to settle."  So that it appears the question was reserved by the decree of June 21, 1900, for the future action of the court.  As to the assignment of error in decreeing the sum of $2,728.42 in favor of C. H. Maxwell because if the matters in difference had been properly settled, a very much less amount would have been due him.  The 7th exception to the commissioner's report in writing is that the commissioner failed to allow a credit to W. B. Maxwell of $150 for part of the funeral expenses of their mother, S. J. Maxwell, and also the item of $300 for counsel fees in the case of Williams against Maxwell, and also for the loss of 70 acres of land conveyed by C. H. Maxwell to W. B. Maxwell in Randolph county, and the taxes paid by W. B. Maxwell in redemption of the other tracts conveyed by C. H. Maxwell to W. B. Maxwell in December, 1893, claiming that the commissioner does not allow exceptant as much as was paid in redemption of the lands.  As to the item of $150 on account of the funeral expense of their mother, C. H. Maxwell did make a writing, authorizing the commissioner to allow as an offset the $150, but in his testimony afterwards given before the commissioner states that the same is incorrect, and that he should not assume to pay the same for the reason that his mother, S. J. Maxwell, left an abundance of property, both real and personal, to pay all the expenses of her funeral, and that W. B. Maxwell could collect the same from the estate at any time, if he had not already done so; while W. B. Maxwell in his testimony concerning the same says: "The next item of $150 is a little more than one-half my mother's funeral expenses, all of which were paid by me, and if my brother voluntarily assumes this part of it, I have no objections."  This language clearly indicates that W. B. Maxwell felt

that he had no legal or just claim against C. H. Maxwell on the account of the funeral expenses, presumably for the reason stated by C. H. Maxwell that their mother left ample property to pay such expenses, and he could collect, or possibly had collected same from her estate. It must be remembered that C. H. Maxwell was living in California, and W. B. Maxwell in West Virginia. As to the item of $700 for the loss of seventy acres of land, it appears that J. F. Harding bought the 70 acres on the 30th of November, 1893, for the delinquent taxes of 1891. In his letter dated November 21, 1893, accepting the proposition of C. H. Maxwell to sell him his lands for $9,000, made on the 23rd of October, W. B. Maxwell says: "I have concluded to accept that offer, viz: $2,200 'payable at any reasonable time,' and accordingly enclose you my note for that amount, payable on demand. As the matter is going your taxes in Randolph are in arrears, and the first thing we know that land will be lost. When the amounts are all ascertained, I will pay up all taxes now due on all the lands since you bought; you can credit this on my note." W. B. Maxwell was fully aware of the facts in regard to the arrearages of taxes and had a year from the time of the purchase of the seventy acres by J. F. Harding in which to redeem the land, and the loss by the running of the time which enabled Harding to procure deed for the same was occasioned by the negligence of W. B. Maxwell who had assumed the duty of its redemption, he being on the ground while his brother was on the other side of the continent and resting on the contract of W. B. Maxwell to pay the taxes and to have credit for same on his $2,200 note therefor. The excess of the taxes in the way of costs and expenses for the redemption of the other tracts of land were doubtless incurred by the same negligence. The commissioner in his account allowed the taxes which were in arrears at the time of the purchase of the land from W. B. Maxwell by his brother. The note of $52.50 mentioned in the exception to the commissioner's report, is allowed by the court in the decree complained of. The item of $300 for counsel fees in the Williams case was properly disallowed. The defendant, C. H. Maxwell, having no interest involved in the said cause in the supreme court. He says in his testimony "The circuit court released me from all liability in the Williams case, and my interests are not involved whatever in the supreme

court, as I understand. it; besides I engaged an attorney, A. J. Valentine, to observe and protect my interest, if any, before the supreme court. W. B. Maxwell advised me to do this; I do not therefore think this is a just charge against me." and it does not appear from the report of the *Williams Case,* 45 W. Va. 297, that it was a case in which C. H. Maxwell should be required to pay attorney fees with W. B. Maxwell. The commissioner having passed upon the facts referred to him, "his findings will be given great weight, though not as conclusive as the verdict of a jury, and should be sustained unless plainly not warranted by the evidence. This rule operates with peculiar force in an appellate court when the findings of a commissioner have been approved by the court below." *Reger* v. *O'Neal,* 33 W. Va. 159; *Fry* v. *Feamster,* 36 W. Va. 454; *Wood* v. *Ward,* 48 W. Va. 652. As to the claim of C. H. Maxwell, there is no error in the decree.

As to the claim of Mary C. Cameron's heirs, "the error assigned is merely technical, that no such parties were before the court having a claim in their capacity as the heirs of Mary C. Cameron. The claim is a just one for money collected by Maxwell as attorney for the heirs of Mary C. Cameron, and not paid over by him. One error assigned is, that such of the parties to the cause, who are in fact the heirs of Mary C. Cameron are in fact indebted to said Maxwell in a sum largely in excess of the amounts claimed by them in their individual rights." It is shown by the testimony of Attorney L. Hansford that "On or about the 20th day of December, 1891, I first visited Mr. A. B. Parsons at his office, who was the commissioner who had sold the Cameron land, and Mr. Parsons showed me a receipt for the money due the Cameron heirs, amounting, as I now remember it, to $742.70, bearing date September 7, 1889. I immediately left Mr. Parsons' office and went to Mr. Maxwell's office, asked him for the money and showed him my authority for acting as counsel for them. His reply to me was that he had never received the money from Mr. Parsons and Mr. Scott, the commissioners, when I had seen not more than twenty minutes before his receipt to Parsons for the money, I became thoroughly convinced of the infamous fraud that he had practiced upon his clients. Within a week from that day that I was in his office I received a check from Mr. Maxwell for W. H. Williams' amount, with the statement that he would pay the balance as

soon as Mr. Parsons paid him, and I knew at that time he had received the money from Parsons something over a year previous to that time. I even showed him the letters that I had received from two of the heirs to whom the money was due. J. A. Hanson, being the party representing all the balance outside of George C. Williams. Myself and Mr. Dayton represents the parties, and he has never paid or offered to pay any part of said debt." W. B. Maxwell also testifies before the commissioners, and files his sets-off which are allowed by the commissioners to the amount of $425.99, which deducted from the aggregate of several sums amounting to $554.01, leaves the amount of $128.02, amount found by the commissioners against Maxwell and confirmed by the court. The commissioners left open the claim of Maxwell for $300, counsel fees paid by him in prosecuting the appeal of Williams against himself in the supreme court, and the court properly refused or omitted to allow it as a just offset, as the costs taxed in said cause, amounting to $343.54, and which included a counsel fee of $30—were allowed as an offset by the commissioners and so decreed. The commissioners having passed upon the evidence, and the court having sustained the commissioners' finding, the appellate court will not disturb the decree, unless plainly warranted by the evidence. *Reger* v. *O'Neal; Fry* v. *Feamster;* and *Wood* v. *Ward, supra.*

It is claimed that "The court erred in decreeing to A. J. Lipscomb as assignee of W. H. Lipscomb, any sum whatever, and especially in decreeing to him the sum of $563.11, the alleged balance due upon a note of $805 dated the 9th day of March, 1888," because said note was barred by the statute of limitations, and that the decree for $956.06 rendered by the circuit court of Preston county in favor of Maxwell against said Lipscomb and others on the 2nd day of August, 1890, was a valid set-off against any balance due upon said note of $805, and that the sum of $107.80 found due from W. H. Lipscomb to Maxwell on the 8th day of July, 1896, upon a settlement of the accounts between them as co-sureties of Miller, a late sheriff of Tucker county, was a valid offset against said $805 note; that W. B. Maxwell, W. H. Lipscomb, and A. J. Lipscomb, all being before the court, it should have taken up and adjusted all matters in controversy among them which were before the court, and rendered a decree over against said W. H. Lipscomb for the bal-

ance justly due from him to said W. B. Maxwell; that it is certain that A. J. Lipscomb is indebted to said Maxwell on account of the purchase money on the property of the Parsons Boom and Lumber Company, and said Lipscomb, Maxwell, W. E. Cupp, special receiver, the First National Bank of Grafton, and C. W. Minear the parties interested in the settlement of this matter, all being before the court, it was the plain duty of the court to fully adjust and settle this matter among the parties before entering any decree in favor of said A. J. Lipscomb. From the examination of the evidence taken before the commissioner in the matter, it appears that this position of the appellant is well taken. The commissioner has based his statement by which he arrives at the sum of $563.11 in favor of A. J. Lipscomb, solely upon the note dated March 9, 1888, for $805, subject to a credit of $400 paid July 1st, 1893, showing a balance due the principal at that date of $405, and interest to November 19, 1898, $155.11. This note of $805 given by Maxwell to W. H. Lipscomb grew out of transactions with Stone, Bowman and Company, of which firm W. H. Lipscomb was a member, Maxwell as endorser for said firm on its failure and the failure of its members had become liable for near $2,000, and being unable to raise all of the money to pay off the same, W. H. Lipscomb loaned him $805 for which Maxwell gave Lipscomb the note as follows: "Due W. H. Lipscomb Eight Hundred and Five Dollars borrowed money to be repaid when collected off of Stone, Bowman and Company out of drafts which I have had to pay for them. This March 9, 1888. Witness my hand and seal. W. B. Maxwell, (seal)." It appears from the depositions of Maxwell (and also from the depositions of A. J. Lipscomb) that he and A. J. Lipscomb had purchased together in equal shares on February 1, 1896, the property of the Parsons Boom and Lumber Company at a sale thereof made by W. E. Cupp, special receiver, at the price of $950, and executed their three several notes therefor; that they renewed the notes from time to time and about the 11th of October, 1897, they borrowed from the First National Bank of Grafton, $500 to pay upon the amount that they owed upon the property; that the special receiver filed in this cause a judgment against him, Maxwell, for $305.71, and the said Grafton Bank had filed its debt against him for over $500, which represented the unpaid purchase money of the said

property purchased by them together. Maxwell claims that A. J. Lipscomb still owed a balance on his part of said purchase money, while Lipscomb says he paid in full his one-half and that Maxwell alone is liable for the whole of the unpaid residue, and in his testimony, A. J. Lipscomb undertakes to show how he paid the one-half due from him, but only shows three payments directly upon said claim, viz: $88 paid October 6, 1896; $50 paid October 17, 1897; and $149.76 paid March 10, 1899, and states that the last said payment represented his part on the balance due on the property. He mentions a few other small items paid, not on that debt, but supposably as charges, or offsets against any claim Maxwell would have against him. He says "On December 1st, 1897, I paid taxes $25.37, expense of sending circular letters, $6.00, and expense paid from printing letters, $5.00, and taxes paid $22.64." The three items which applied directly upon the purchase made on the property amounted to $287.76, if paid as stated. Lipscomb filed no vouchers showing any of the said items of payment or charges. Maxwell filed a claim or bill of offsets against A. J. Lipscomb, amounting in the aggregate to $306.47, of which $242 is "one-half amount paid W. E. Cupp, special receiver for Parsons Boom and Lumber Company, $484—$242. The commissioner has entirely ignored, in making up his accounts, all transactions between W. B. Maxwell and A. J. Lipscomb except the note of $805, and the credit of $400 endorsed thereon, and to arrive at his conclusion showing the indebtedness of Maxwell to Lipscomb, states the following: "I further report that W. B. Maxwell has filed before me in this cause a judgment rendered by the circuit court of Preston county on the 2d day of August, 1890, a judgment against Stone, Bowman & Co. (of which W. H. Lipscomb was a member) for the principal sum of $956.06.

That on or about October 1, 1896, said Maxwell recovered by compromise from Addison Child the sum of $425 which should be placed as a credit on the above stated judgment as of that date, October 1, 1896.

Relative to this matter I report as follows, to-wit:

"Date of note, March 9, 1888; amount $805.00; credit July 1, 1893, $400.

Balance due as of that date the principal sum of....$405.00
Interest thereon from that date to Nov. 19, 1899....$155.11
Total.........................................$560.11

So there remains several items of account between A. J. Lipscomb and W. B. Maxwell which were not passed upon by the commissioner which should have been settled and reported by him. The note for $805, the balance of which is reported in favor of A. J. Libscomb as assignee of Wm. H. Lipscomb, was given as stated on its face for money loaned by Wm. H. Lipscomb to Maxwell to enable him, Maxwell, to pay off the debts of the firm of Stone, Bowman and Company as their endorser, and loaned with the distinct understanding that it was not to be paid back to Lipscomb, unless collected from the assets of the said firm of Stone, Bowman and Company, of which firm W. H. Lipscomb was a member, and secondarily liable for all the debts of the firm, so that in effect it amounted to a loan by said Lipscomb for the purpose of paying a debt for which he was not only liable, but was in fact his own indebtedness, hence the provision that the money was not to be returned to him, unless it should be collected from the funds of the said firm. The only definite amount that is shown to have been collected from said funds is the judgment against Childs in favor of Maxwell who applied the net proceeds of said judgment, $400, upon the said debt, and this is the only credit ever given upon said note. Any amount collected from the assets of the said firm of Stone, Bowman and Company would create a liability for such amount upon said W. B. Maxwell to be applied as payment on the $805 note. It would neither be equitable nor right to require Maxwell to pay the note from his individual funds. On examination by his own counsel, the question is asked W. H. Lipscomb "There has been filed before the commissioner in this cause a paper-writing in the nature of a note or due bill dated March 9, 1888, signed by W. B. Maxwell and made payable to you, for the sum of $805; upon the back of said note is a credit endorsed as of July 1, 1893; under the provisions of said paper-writing said amount is to be repaid when collected off of Stone, Bowman & Co. Now please state who endorsed the credit on the back of said note, and whether or not the balance of said note remains due and unpaid?" And he answered "W. B. Maxwell endorsed the credit and there has never been a cent paid on the remainder of the note." He further states that his understanding was that Maxwell had collected from Stone, Bowman and Company the money out of which this money was to be paid in accordance

with agreement in said note or writing. Maxwell testifies, referring to the judgment against Addison Child, "The net amount received by me upon this judgment should be credited upon my Stone, Bowman and Company debt, and these are all the payments I ever received upon those judgments." The note so containing a condition precedent to its payment, it would be inequitable to hold Maxwell liable therefor beyond the amount collected by him from Stone, Bowman and Company, and A. J. Lipscomb stands in no better condition than his assignor, W. H. Lipscomb. He took the note of $805, subject to all the equities existing between Maxwell and W. H. Lipscomb. The decree in favor of A. J. Lipscomb is erroneous, and should be reversed and the cause recommitted to the commissioner for a full settlement of differences between the said A. J. Lipscomb, W. H. Lipscomb, and W. B. Maxwell, upon the principles herein laid down.

In November, 1904, after submission of this cause, and just after the cause was taken up for consideration, counsel for appellee, W. B. Maxwell, tendered a brief in the cause assigning error in said decree in a matter foreign to the purpose of the appeal taken in this cause and raising a question which was in no wise raised by the appeal and insisting that it should be passed upon by this Court. The deed of assignment made by W. B. Maxwell contains the following provision: "If for any cause said trustee does not realize a sufficient amount from the whole of said property to pay all the debts of said grantor, the amount so realized and received by the creditors who participate in any manner in the proceeds of sale shall stand satisfied and the grantor forever discharged from all liability to them and released therefrom, but nothing in this clause shall apply to creditors who refuse or fail to participate in the proceeds of said property," and further that it was an absolute assignment of "all the property of every kind and description owned and claimed by him, both real estate and personal property wherever situated," claiming that the following provision in the decree of June 21, 1900, is erroneous, to-wit: "And it is further adjudged, ordered and decreed that said parties to whom debts have heretofore been decreed shall be entitled to their portion of the money so decreed to them, and may accept the same without in any wise binding themselves by so accepting the same to accept the amounts so received by them in full satisfaction and dis-

charge of their debts as provided in the deed of trust from W. B. Maxwell to C. O. Strieby, trustee, dated April 3, 1899, but the amount so received by them shall only be a credit upon the debts so reported and decreed to them and shall not be a satisfaction of the same unless they specifically agree to accept the same in full discharge of the same," citing in support therof *Clark* v. *Figgins,* 27 W. V. 663, (Syl. point 3) ; *Hearst* v. *Lechie,* 97 Va. 550, (34 S. E. 464) ; *Skipwith* v. *Cunningham,* 8 Leigh 271; *Williams* v. *Lord,* 75 Va. 400 ; *Gordon* v. *Cannon,* 18 Grat. 381; *Phippu* v. *Durham,* 8 Grat. 457 ; *Kevan* v. *Branch,* 1 Grat. 274; *Quarles* v. *Kerr,* 14 Grat. 48 ; *Talley* v. *Curtain,* 54 Fed. Rep. 49. The filing of the brief in this cause by the said W. B. Maxwell at this time is not only contrary to the rules of this Court and could not properly be considered, but the assignment of error, is without the purview of the appeal taken in this cause. Before taking the appeal, C. O. Strieby trustee, appellant gave notice to the plaintiffs and defendants, including the defendant, W. B. Maxwell, that the appeal proposed to be taken from the decree of June 21, 1900, was only "So far as said decree adjudicated the rights of said W. H. Lipscomb, A. J. Lipscomb, C. W. Minear, J. W. James and Company, C. H. Maxwell, George C. Williams, Mortimer G. Williams, Sallie L. Reynolds, T. S. Reynolds, W. H. Williams, Horace D. Williams, Lucy V. Hanson, and John A. Hanson, and will not appeal from any of the other matters adjudicated in said cause, and that for the purpose of presenting the matter appealed from, I will not have a full transcript of said cause made," then mentions the portions of the record that he had directed the clerk to include in the transcript, and closed his notice by saying "And it is not my purpose or intention to appeal from any other part of said final decree, except as aforesaid, and any party to said cause desiring to have any other part of said cause reviewed should take such action as is proper to secure the part of the record pertaining thereto copied as provided by the statute in such cases made and provided." In 2nd Cyc. 969, under the title "Appeal and Error" it is said: "Where only a part of a judgment or decree is appealed from the remainder is unaffected and may be enforced, and if the appeal from a particular order or judgment does not bring the entire cause into the appellate court, but only sufficient of the record to present the question as to the propriety of the

particular order, further proceedings in the conduct of the cause are properly had in the lower court. An appeal from an order upon a motion brings up the motion only as well as copies of papers on which it is passed and does not bring up the action," and authorities there cited; and under the same title, 3d Cyc. 220: "In case of an appeal from a part of a judgment or decree, the appellate court will not review the whole judgment or decree." In *Pac. Mut. Life Ins. Co.* v. *Fisher,* 106 Cal. 224, (39 Pac. 758), it is held: "A party cannot assign as error a particular part of a judgment as to which he has not appealed." And in *Scutts Appeal,* 46 Conn. 38, where it is held that an appeal to the superior court from the disallowance by the commissioners of an insolvent estate, of one of two claims, does not carry up for review the allowance of the other. In *Ikerd* v. *Postlewharte,* 34 La. Ann. 1235: "The appellate court will not review the whole of a judgment, when the appeal is from a part only." And in *Robertson* v. *Bulliners,* 11 N. Y. (1 Kern) 343, it is held: "The court of appeals cannot review any part of a decree not appealed from." See also *Moerchen* v. *Stoll,* 48 Wis. 307 (4 N. W. 352); *Staunton* v. *Gohler,* (Sup.), 16 Misc. Rep. 383, (38 N. Y. Supp. 64). Where several co-plaintiffs or defendants stand upon distinct and unconnected grounds, when their rights are separate and not equally affected by the same decree, the appeal of one does not bring up for adjudication the rights or claims of the others. *Walker* v. *Page,* 21 Grat. 636, and it is there further held that where the parties not appealing stand upon the same ground as those appealing, the supreme court will consider the whole case and settle the rights of all parties, and see *Roser* v. *Roanoke Nat. Bank,* 83 Va. 589, (4 S. E. 820); *Bowlby* v. *DeWit,* 47 W. Va. 323. The decree complained of is reversed as to the claim of C. W. Minear, and a decree entered against Minear as hereinbefore stated and the decree in favor of A. J. Lipscomb is reversed, set aside, and annulled, and the cause remanded for further proceedings as herein indicated, with costs to the appellant, and the decree is affirmed as to the appellees, C. H. Maxwell and Mary C. Cameron's heirs, and in all other respects, with costs and damages to said appellees.

*Reversed in part.*