EUGENE LEVI, Administrator, v. EMILE S. LEVI, Appellant.

**Fraudulent conveyances:** CREDITOR'S RIGHTS : EVIDENCE OF INDEBTED-
1  NESS.  When a secret, voluntary conveyance of property has been set aside at the suit of a pre-existing creditor, he may not only subject the property to payment of that portion of his claim then accrued, but also to the balance thereafter accruing. In this action the evidence is held to show that the grantor was indebted to plaintiffs at the date of the conveyance.

**Same:**  ACCEPTANCE OF CONVEYANCE : KNOWLEDGE OF INDEBTEDNESS.
2  One who obtains title to property by a secret, voluntary convey- ance and allows his grantor to retain the apparent ownership, on the strength of which credit is extended the grantor, can not insist on his right to the property as against such creditor; and it is immaterial that he had no fraudulent intent in accepting the conveyance, or that he was unaware of the grantor's accu- mulating indebtedness; but in this instance the evidence discloses sufficient knowledge of the circumstances to put him on inquiry regarding the grantor's indebtedness.

**Same:**  ESTATES OF DECEDENTS : ALLOWANCE OF CLAIMS : EFFECT.  Where
3  the defendant in an action to subject the land secretly conveyed to him by his mother, to the satisfaction of her debt, did not appear and resist an allowance of the claim against her estate, the allowance of the claim was not *prima facie* proof of its cor- rectness as against him.

**Evidence:**  FIRM BOOKS OF ACCOUNT.  Where a firm, carrying on a
4  mercantile business, also acted as the financial agent of a party in the collection of rents and the disbursement of the funds thus collected, under the direction of such party, the entries in the firm books made in the ordinary course of business, showing advances and charges expended for the party were competent evidence against her and also against her grantee, in a suit to

subject the property conveyed to the payment of her debt; and the books themselves having been properly identified and the entries having been shown to have been made in the ordinary course of the firm business, outside of ·its mercantile business, constituted competent evidence of the money thus received and paid out, in the absence of anything to impeach the good faith of the transactions.

**Same:** GOOD FAITH ENTRIES: EVIDENCE. The mere failure of a member of the firm to distribute his father's estate and turn over to the firm the share belonging to his mother, for whom the firm was acting as financial agent, was insufficient to charge the firm with bad faith and defeat its right to recover the sum due it, as shown by the account with her proven by competent evidence.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

FRIDAY, JUNE 7, 1912.

ACTION in equity, brought by plaintiff, as administrator of the estate of Minette Levi, to subject to the payment of her debt to the firm of James Levi & Co. certain described real property, which during. her lifetime had been conveyed to the defendant without consideration and by way of gift by a deed deposited with a third 'person and delivered to defendant only after grantor's death; the allegation being that at the time of the execution of such conveyance she was indebted to said firm and at the time of her death possessed no other property out of which her indebtedness could be satisfied, and that the greater part of the indebtedness was contracted after the execution of such conveyance but without knowledge thereof on the part of the creditor, and that credit was given to her in reliance on her continued ownership of such property. There was a decree for the plaintiff, finding that Minette Levi was at the time of her death indebted to the firm of James Levi & Co. in the sum of $12,136.82, which had been previously established and allowed in the probate court

as a claim against her estate, and that the real estate described in plaintiff's petition was subject to the payment of such debt as should remain unpaid after proper application of all other property of her estate, establishing a lien, etc. From this decree the defendant appeals.—*Affirmed.*

*Kenline & Roedell, N. J. Lee* and *Emile S. Levi,* for appellant.

*Lacy, Brown & Lacy,* for appellee.

McCLAIN, C. J.—A brief narrative of the relations between the parties conerned in this litigation and the circumstances under which the alleged indebtedness of Minette Levi to the firm of James Levi & Co. was contracted will serve as a basis for the discussion of the various questions presented by counsel.

Prior to 1887, Alexander Levi had had an interest in a retail mercantile business conducted in the name of James Levi, who was his nephew and son-in-law. In that year Alexander transferred his interest to his son Eugene, and the firm name became James Levi & Co., and this firm continuing to the present time is the sole creditor in whose behalf it is now sought to subject property conveyed by Minette Levi to defendant to the payment of her debts.

About the year 1883, Alexander Levi distributed his real property among his children by deeds reserving to himself a life estate in portions thereof, and in consequence of this distribution his daughter Selina, wife of James Levi, his son Gus, a deaf mute, and his son Emile, defendant in this action, acquired each a one-third interest in property known as the Levi Block, subject to the reserved life estate. As a part of this distribution, James Levi became the owner of a vacant lot, on which he erected a dwelling house, which became the home not only of himself and wife, but also of Alexander and Minette Levi. For a time

the expenses of conducting the household were shared jointly, but subsequently some arrangement was made by which Alexander paid board for himself and wife at the rate of $840 per year. From 1887, when Alexander Levi ceased to have an interest in the retail business, until his death in 1893, he continued to receive the income from real property of which he had been the owner and in which he retained a life interest, and also from the real property to which this controversy relates, known as the Fourth street property, which was not involved in the distribution made in 1883 and was assumed to be his property, although it appeared after his death that he had conveyed it to his wife, Minette, in 1881. The business of collecting this income, and on the other hand paying taxes and insurance and making repairs as to all these properties, was conducted through the firm of James Levi & Co., who carried an account with Alexander Levi on which he was credited with sums received and charged with moneys paid out on account of these properties, and in this account Alexander was charged annually with the sum of $840 for board for himself and wife.

After the death of Alexander Levi, it became known that the widow held the title to the Fourth street property, and that the three children had each a one-third interest in the Levi Block, and thereafter the firm received the rent of the Fourth street property for the widow and paid for taxes, insurance, and repairs thereon, entering receipts and payments on the books of the firm in an account kept with her. This defendant then represented to his mother that he had not received his fair share in the distribution of his father's property and secured with her an arrangement that his one-third of the taxes, insurance, and repairs on the Levi Block should also be charged to her account by the firm. From time to time the firm advanced sums of money to the widow, which were charged to her account, but for which no receipts were taken. The firm also

charged to her once each year an item for board to the amount of $420, being half the amount for which Alexander Levi had been charged annually on the books of the firm for the board of himself and wife. The firm also paid out on her account various contributions made by her to the support of the rabbi and to the support of relatives, including the son Gus, which were also paid out without receipts being taken. The firm also charged to her account merchanidse furnished to her in its mercantile business and paid various bills, for which, to some extent at least, receipts were taken and held by the firm. The entries of these receipts and charges were made in the regular course of business on the books of the firm by the members thereof and by their bookkeepers.

After the death of Minette Levi in March, 1907, this plaintiff, who, as already indicated, was her son and a member of the firm of James Levi & Co., was appointed her administrator, and the firm filed with the administrator an account against decedent showing a balance due the firm of $12,136.87. The probate court appointed a special administrator to examine this account, and in due course it was approved and allowed by the court as a claim against the estate, and it constituted the only claim so filed and allowed.

From the time of the death of Alexander in 1893 until her own death in 1907, Minette Levi was apparently the owner of the Fourth street property and had an interest indeterminate in value in the estate of her deceased husband, which remained unsettled, and she had no other property. The Fourth street place was worth from $20,000 to $25,000. Immediately after her death, a deed of the Fourth street place, secretly executed by her a few months after her husband's death to this defendant and deposited with the lawyer who drew it, was delivered to this defendant and placed on record. This deed, absolute in form, had attached to it a memorandum of instructions reciting

its delivery to the lawyer to be kept and held by him for the grantee until the death of the grantor, on the happening of which event the deed was to be delivered to the grantee (this defendant), his heirs, executors, or assigns; this memorandum being signed by the grantor.

Substantially two questions were submitted to the lower court for determination: First, can the property described in the deed last above referred to be subjected in the hands of the defendant to the payment of the account of James Levi & Co. which had been allowed by the probate court as a just claim against the estate of his mother; and second, is there sufficient evidence to justify and require the enforcement against the property of the entire amount of the claim thus allowed?

I. It is conceded that the conveyance of the Fourth street property to defendant by his mother was wholly without consideration and voluntary, and that the firm of

1. FRAUDULENT CONVEYANCES: creditor's rights: evidence of indebtedness.

James Levi & Co., if an existing creditor of Minette Levi at the time this voluntary conveyance was made, may enforce any valid claim it has against her estate by causing to be subjected to its payment the property thus voluntarily conveyed. That is to say, if the firm was a creditor when the conveyance was made, it may have the conveyance set aside and the property subjected to the payment not only of that portion of its claim which antedated the conveyance, but also the balance of its claim which accrued after the conveyance. This is on the general principle, not questioned by counsel for appellant, that when a conveyance is set aside at the suit of a pre-existing creditor, all creditors, whether antecedent or subsequent, may come in for the satisfaction of their claims. *O'Brien v. Stambach,* 101 Iowa, 40.

Counsel for appellant insist, however, that the firm of James Levi & Co. was not a creditor at the time of the execution of the deed, and they present a showing from

the itemized account of the firm indicating a small balance due the firm at the date of the conveyance with the additional contention that, if certain small credits omitted from the account had at that time been given, there would have been a small balance in favor of Minette Levi. Without an elaboration of details, the explanation of which in the evidence is rather complicated but to us is satisfactory, we need to do no more than announce our conclusion from the record that the account is in this respect correct, and that at the date of the execution of the deed Minette Levi was to the extent of $100 or more indebted to the firm. The uncertainty as to the amount is due to the fact that she had not yet been charged at the time of her death with the item of board for a portion of the year. In other words, the account as presented, and which we find to be correct, showed her indebtedness to the firm to be about $50, to which the firm would be entitled to add a further sum for board accrued for a part of the year under the arrangement already explained by which she was charged on the books of the firm with the lump sum of $420 for board.

But without regard to the question whether the firm was a creditor at the time the voluntary conveyance to defendant was executed, we think that the firm may enforce payment of its claim out of the property conveyed to defendant by secret deed, in view of the fact that the property thus conveyed was substantially all the property of the grantor, and that the firm gave her credit on account of her apparent ownership of such property. One who takes title by a secret voluntary conveyance and allows his vendor to remain in apparent ownership of the property conveyed, which is in good faith made subsequently the basis of extending credit to such grantor, can not, as against the subsequent creditor thus misled, insist that he has a higher claim to the property than the creditor. A court of equity will subject such property to the satisfaction of the credit-

2. SAME: acceptance of conveyance: knowledge of indebtedness.

or's valid claim. This rule seems to be so fundamental that a reference to general statements by text-writers collecting the authorities bearing on the subject is sufficient. See Wait, Fraudulent Conveyances (3 Ed.) 375, 419; 14 Am. & Eng. Ency. of Law. (2d Ed.) 250, 259; 20 Cyc. 425.

. It is immaterial that the vendee had no fraudulent intent in accepting the conveyance. He is not entitled to give it a fraudulent effect by asserting his title as against a creditor who has in good faith made advances in reliance on the apparent title of the grantor. *Curtis v. Lewis,* 74 Conn. 367, 371, (50 Atl. 878). And this principle has been specifically applied to cases where a voluntary conveyance has been placed in the hands of a third person for delivery to the grantee after the grantor's death. *Rathmell v. Shirey,* 60 Ohio St. 187 (53 N. E. 1098); *Taft v. Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291); *Wolcott v. Johns,* 7 Colo. App. 360 (44 Pac. 675).

We do not regard it as important on this phase of the case that Minette Levi should have been advised that the debit side of her account was growing faster than the credit side. She must be presumed to have assented to the account as a whole if she was properly chargeable with the various items. We do not stop therefore to consider the question whether testimony of the members of the firm that she assured them the account would be paid was admissible, in view of the statute relating to communications and transactions with a deceased person. It seems to us equally immaterial whether the defendant was aware of the growth of the account against his mother. If he allowed the property to remain in his mother's name as apparent owner, and the firm in reliance upon such apparent ownership extended credit to her, he is in no situation to say that he was not aware of credit being extended.

But if it were necessary to reach a conclusion as to defendant's knowledge of the accruing account against his mother, we should have no hesitation, under the evidence,

in finding that he had at least sufficient knowledge of the circumstances to put him on inquiry as to the fact, if the fact itself were material. The members of the firm testified that from time to time defendant looked over the books of the firm and noticed the tax receipts and charges for insurance which the firm was entering on its books as against his mother. He certainly must be presumed to have been aware of the fact that the firm was charging to his mother the taxes and insurance on his one-third of the Levi Block, for he testifies that he had an arrangement with his mother by which this should be done.

Our conclusion therefore is that whatever just account James Levi & Co. had against Minette Levi at the time of her death may now be properly enforced as a charge against the land deeded by her to the defendant. The court made provision in its decree that any assets of her estate be first applied to the satisfaction of the indebtedness, and of these provisions no complaint is made.

II. In regard to the correctness of the account as a whole, one of the contentions for appellee is that the regular allowance and establishment of the claim against the administrator is *prima facie* proof of its correctness as against defendant, grantee of the decedent. But this court seems to have held otherwise in the case of *Milburn v. East,* 128 Iowa, 101. Defendant, as one of those entitled to participate in the distribution of his mother's estate, might, no doubt, have appeared and resisted the allowance of the claim; but his failure to do so would not, in our judgment, preclude him from questioning the validity of the claim after it was allowed by the probate court, when it was sought in this proceeding to subject to the payment of such claim the real estate which the defendant claimed title to under a deed executed before the death of his mother. This seems to have been the view of the trial court, for it proceeded to take testimony as to the validity

3. SAME: estates of decedents: allowance of claims: effect.

of the claim, and we shall deal with the question on the evidence as though it were a question now for original determination as between the creditor and this defendant.

Looking at the account as a whole, we find that it covers the entire period of fourteen years from the death of Alexander Levi to the death of Minette Levi; that it shows credit items entered from month to month in the aggregate of ·$21,857.47, which are explained by the testimony of the members of the firm as being the rents received on the property to which this controversy relates, and there is no contention for defendant that all the rentals from that property down to the end of the year 1905 are not credited to Minette Levi as cash received by the firm for her. It appears that after 1905 the defendant collected these rents for his mother. On the other hand, debit items for the fourteen years aggregate $33,995.34; and, roughly dividing these items into groups, it appears that about $10,000 was for money paid out by the firm for taxes, insurance, and repairs on the property of Minette Levi and on account of defendant's one-third interest in the Levi Block under the arrangement already referred to. So far as taxes paid are included in this aggregate sum, receipts therefor were introduced in evidence, showing payment thereof by the firm. There are also some receipts for insurance of the property of Minette Levi and also for the Levi Block paid the firm; one-third of the amount of the insurance paid on the Levi Block being charged to the account of Minette Levi. The items of taxes, insurance, and repairs charged to Minette Levi on account of defendant's one-third interest in the Levi Block amount to more than $5,000. ' The total of items for merchandise purchased by Minette Levi of the firm and charged to her account is slightly in excess of $700; the aggregate of items for each year being transferred from the general books of the firm showing sales of merchandise to the general account of Minette Levi. Items for bills paid on account of the son

Gus at the direction of his mother and charged to her account exceed in their aggregate $2,000. Items of bills paid for defendant by his mother's direction exceed in their aggregate $1,300. The only other considerable group of items which can be conveniently lumped together consists of the annual charge to Minette Levi of $420 per year as board; that amount being charged to her account once each year and credited on the account of James Levi. The total for board was therefore nearly $6,000.

Taking the account as a whole, the first question is whether the entries on the books of the firm constitute competent evidence of charges against Minette Levi. It

4. EVIDENCE: firm books of account.

appears that the entries were made in regular account books by members of the firm and by its clerks. The handwriting in which the entries were made is identified in the evidence as being that of the partners and of persons who were regularly acting as clerks in their employ. One of these clerks died before the trial, and his handwriting was sufficiently proven. The entries made by members of the firm and by other clerks were identified by their own testimony. There is no question, therefore, as to the competency of the account books to prove these items of charge against Minette Levi, save that, as is contended, the books of the firm carrying on a mercantile business are not competent to prove items of moneys loaned or advanced. On this question we are referred to several decisions of this court to the effect that charges for money paid and money lent can not be proved by the books of account of the party offering them unless he is engaged in some general business involving the payment of money on account such as the business of banking. *Veiths v. Hagge,* 8 Iowa, 219; *Sloan v. Ault,* 8 Iowa, 229; *Cummins v. Hull's Adm'r,* 35 Iowa, 253; *Orcutt v. Hanson,* 70 Iowa, 604; *Young v. Jones,* 8 Iowa, 219. But so far as the firm was carrying on the business of collecting rents for Minette Levi

and dispensing under her direction the money thus collected, it was not carrying on simply a mercantile business, but was acting as her financial agent, and we think that entries in its books made in the ordinary course of business, showing charges for moneys advanced or expended on her account, were competent evidence as against her, and therefore as against defendant in this action. The views of the court expressed in the cases just cited support this conclusion.

In the case of *Veiths v. Hagge, supra,* the question whether entries of charges in account books are admissible in evidence is made to depend on whether they appear to have been made in the ordinary course of business; and in *Young v. Jones, supra,* it is said that, if the payment or loan of money constitutes in any just sense the ordinary business of the person in whose books charges for money paid are found, he may justly claim the right to prove them by his books. In *Orcutt v. Hanson, supra,* it appeared that the party whose books were introduced in evidence was engaged in the real estate, general brokerage, and discount business, and the business of loaning money, and that his books showed a continuous dealing with others as a money broker, and that the character of the business with the party against whose estate it was sought to establish an account for money advanced to him was that of loaning money and advancing money for him, and the entries of sums of money loaned and advanced were held to be competent. Under our statute (Code, section 4623), books of account, to be admissible in evidence against the party sought to be charged thereby, "must show a continuous dealing with persons generally or several items of charge at different times against the other party in the same book or set of books." The other requirements of the statute having been met in this case, we reach the conclusion that the books of the firm offered in evidence were admissible to show charges for money paid to Minette Levi or paid

to others on her account or at her direction; the entries having been made in the ordinary course of a business for the firm carried on outside of its mercantile business and as the financial agent of the person charged. The books being properly identified, and entries being shown to be made in the ordinary course of business, the books themselves constituted competent evidence of the facts disclosed as to money paid to or on account of Minette Levi. *State v. Brady,* 100 Iowa, 191.

As to particular items of charge, the propriety of which is questioned by the appellant, we shall indulge in but slight elaboration. It appears that in 1894 and 1895, Minette Levi took a trip abroad with her son Eugene, the total expense of which for both of them amounted to about $4,000, and that on their return Eugene Levi caused to be charged on the books against his mother and credited on the firm's books in his favor the sum of $1,000, to cover expenses of her treatment for an injury resulting from an accident, the sums paid out on her account for presents which she brought back for defendant and others of her relatives, and like matters. So far as we can ascertain from the record, the item of charge was reasonable and the entry on the books admissible for the purpose of establishing a proper charge against her. It appears that about $200 was paid out and charged to Minette Levi's account at various times for Christmas and birthday presents to the children of James and for school tuition on account of one of his sons. These items are sufficiently proven by the entries made under the principles already announced. It appears that several small sums of money were charged on the account as having been paid to her, although the money in these instances was given to the children of James Levi to be taken to her. There is nothing in the record to impeach the good faith of these transactions. The items last above enumerated are specifically referred to here for the reason that they are made the basis of the claim that

the firm does not come into court with clean hands, being chargeable with the perversion of the funds of Minette Levi. In the absence of any evidence that these transactions were not in good faith, we would not be justified in refusing relief as to the entire account to the firm.

It is also said in this connection that Eugene Levi had funds of his father's estate in his hands for which he had not accounted as administrator of his estate. But, as to these funds, the defendant is fully protected by a provision in the decree requiring that they be applied on the account. Surely, a mere failure on the part of Eugene Levi without demand from his mother to specifically distribute the estate of his father and turn over to her such sum as she might be entitled to receive could not be charged to the firm as bad faith defeating the recovery of its just account.

5. SAME: good faith entries: evidence.

On the whole, it is sufficient to say with reference to the account that it is proven by competent evidence, and that no items thereof are so far impeached as to require their disallowance. The trial court had before it not only the account itself, but the testimony of witnesses taken in great detail with reference to specific items, and large amounts paid for taxes, for insurance, and for bills presented by third persons against Minette Levi and this defendant are shown by receipts to have been paid out by the firm. We find no occasion for diminishing the amount of the account as allowed by the trial court.

The preceding discussion covers all of the objections made in behalf of defendant to the allowance of the claim as a charge on the property received by him from his mother. Further elaboration of details would be of no benefit to the defendant.

We reach the conclusion that the decree of the trial court was correct, and it is—*Affirmed.*