H. P. LONG, Administrator, Appellee, v. ANNA DUNCAN, Appellant.

**DEEDS:** Gift to Daughter—Failure to File Deed—Estoppel. Where a daughter became the mother of a bastard child, and thereafter lived with her parents, working as a servant, and her father, before the appointment of his guardian, gave to her a deed to a house on which he had paid only $200, and the deed was intentionally withheld from record by the daughter, without fraudulent intent, and the guardian, subsequently appointed, paid the balance of the purchase money and incurred obligations for the father, and services were rendered by others, in the belief that title was in the father, *held*: (1) That the deed was properly sustained as against the guardian, as a natural and reasonable gift; (2) that the daughter was estopped from claiming that said property should not be charged with a lien for the value of services in caring for the father prior to the date of the recording of the deed to her.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

MAY 14, 1919.

Suit by a guardian to set aside a deed previously executed by his ward. There was a decree for the defendant. Later, a new trial was ordered and had. As a result of the second trial, partial relief was given the plaintiff. The defendant has appealed.—*Affirmed.*

*Smith & Bartow,* for appellant.

*Wm. M. Jackson,* for appellee.

Evans, J.—This suit was brought by the guardian to set aside a deed executed by his ward to Anna Duncan, on July 27, 1914, whereby the grantor conveyed a residence property in Clearfield of the value of $1,600, reserving to himself, however, the life use of the same. The general contention on the part of the plaintiff was that J. L. Duncan was mentally incompetent at the time of the execution of the deed; that there was no consideration for the deed; that the only consideration for the deed was the agreement of Anna Duncan to support her father, which agreement she failed to perform; that the deed was fraudulently obtained by undue influence, etc. At the first trial, evidence was heard on the issues thus tendered, and a decree was entered for the defendant. Under the record thus made, the decree was clearly right. J. L. Duncan was not under guardianship at the time of the execution of the deed, nor was he, at that time, mentally incompetent. The plaintiff was appointed as his guardian in December following. Neither was there any fraud or undue influence exercised by or on behalf of the defendant in obtaining such deed. In a strictly legal sense, there was a lack of consideration. But the motive or purpose of the gift was natural and reasonable, and quite compelling. The making of the deed was also consistent with the interest of the grantor himself, in that he expected to make his home with his daughter in the property conveyed. A great tragedy had come into the

life of the daughter, which had rendered her quite helpless in earning capacity and friendless in social intercourse. In girlhood's first flower, the scarlet letter had been written on her breast. Save for the loyal affection of father and mother, she has not since found love in the world. Her mental condition has been near the breaking point, and is not free from question. She remained at home as a servant to her father and mother, and rendered continous, industrious, and faithful service, without other compensation than is represented by the deed in question. At the time of the making of such deed, she was 53 years of age. That the deed was the spontaneous result of parental solicitude for a friendless daughter, and of parental recognition of long and faithful service, is beyond doubt. The mother had died not long before, after years of nursing by Anna. The father was her last friend. His expectancy of life was brief. (His administrator now represents him.) Her own son, whose innocent childhood first soothed and then shared the bitterness of her unwedded maternity, now calls her "Anna" and "a ———." He is her opposing litigant herein. This is suggestive of the desperate outlook which appealed to the father in the making of the deed. Where shall covert be for a dishonored mother, if the son of her dishonor spurn her? The property in controversy represents the last remnant of the father's estate. He had been in more comfortable circumstances. The father and daughter became involved in litigation with other members of the family, which weighed heavily upon both of them, physically and mentally. This attack upon the deed is one of the sequences. In December, 1914, they were found ill and helpless, in a fireless home. A guardian was appointed for the father, who made provision for him. Anna found a pillow in the poorhouse for a time. Upon the first trial, the trial court entered a decree sustaining the deed. Thereupon, an application for a new trial was made and

sustained. Upon the new trial, amended pleadings were filed, and a new ground of attack put forward. It was made to appear that the property in question had only recently been purchased by Duncan, and that only $200 of the purchase money had been paid thereon; that the deed from Duncan to Anna was intentionally withheld from record until April, 1915; that, in the meantime, the guardian for Duncan had paid the balance of the purchase money, in the belief that the title to the property was in his ward; that he had incurred obligations for the care of his ward in the same belief; that those who cared for the ward rendered their service in the same belief. This service had been very burdensome, in that the ward had suffered a stroke of paralysis. It was undisputed that the deed had been intentionally withheld from record by the attorney of Anna, though without fraudulent intent. The trial court held, upon the second trial, that an estoppel was thereby created as against the grantee, and that the property should be charged with a lien for the value of the service rendered prior to April, 1915, such value being fixed at about $500. (The appeal from such decree is by the defendant.) Hard as the result is, we see no escape from the estoppel thus declared. The decree must, therefore, be—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.