GEORGE V. JORDAN, Appellant, v. ANNA M. SHARP et al., Appellees.

FRAUDULENT CONVEYANCES: Knowledge of Grantee—Non-partic-
1  ipation in Fraud. A creditor will be protected in taking a con-
   veyance from his debtor when the creditor acts solely for his own
   protection, and not to aid the debtor in defrauding other creditors.

HUSBAND AND WIFE: Conveyances—Non-estoppel Against Wife.
2  One who purchases a promissory note without any consultation
   whatever with the maker or the maker's wife may not successfully
   assert that the wife is estopped to lay claim to lands which stood
   in the name of the husband-maker at the time of said purchase.

Headnote 1: 27 C. J. p. 630. Headnote 2: 21 C. J. p. 1176.

Headnote 1: 12 R. C. L. 540.

*Appeal from Crawford District Court.*—R. L. MCCORD, Judge.

JULY 1, 1927.

Action to subject certain real estate to the claim of a judgment against the defendant Brinten Sharp. From a decree in favor of the defendants plaintiff appeals.—*Affirmed.*

*Sims & Page,* for appellant.

*P. W. Harding* and *Fremont Benjamin,* for appellees.

ALBERT, J.—On the 26th day of January, 1926, a judgment was entered of record in Crawford County, Iowa, in favor of the plaintiff herein, against Brinten Sharp, defendant, for the sum of $2,484.93, together with interest and costs. This action was to set aside and cancel a conveyance made by Sharp to his wife, and to subject a certain quarter section of land in Section 22 in Crawford County, Iowa, to the payment of said judgment.

The case turns largely, if not wholly, upon the facts. The record fairly shows the following facts in the case: The defendants were married in Pennsylvania in 1889, and moved to Iowa

1. FRAUDULENT CONVEYANCES: knowledge of grantee: nonparticipation in fraud.

about 1891. Anna M. Sharp had at that time $300, which she turned over to her husband, Brinten Sharp, which she says he agreed to pay back to her, with interest at 5 per cent. They later went to South Dakota, and took up a homestead, which homestead they traded for a house and lot in Vail, Iowa, which they sold for $1,000. This money was divided between them, and Anna later let the husband have her share. There is no showing that there was any agreement or understanding that the same was to be repaid, and nothing was said about interest. This $1,000 was used to buy 160 acres of land south of Dow City, onto which they moved, and proceeded to farm the same. They later sold this land, realizing something like $2,000 therefrom, and then purchased 240 acres with the proceeds, which they later sold, realizing, as the net proceeds thereof, the sum of $9,000. This money was again divided equally between them. The wife then bought a house in Dow City, paying $1,200 therefor, and she claims to have loaned the balance, $3,300, to her husband, at 6 per cent interest. At the time the $9,000 was divided between them, the $300 originally loaned by Anna to her husband was settled and disposed of. The $3,300 was used by Brinten Sharp in the purchase of a livery business, which was later traded for land in South Dakota. This was afterwards lost. The house which was bought in Vail was traded in, as a part of the purchase price of the quarter section in controversy, it being taken in at $2,000; and that was all that was paid down on the purchase of this tract of land. At the time they purchased this land, there was a $10,000 loan on the same, which is still unpaid.

In March, 1922, Brinten Sharp executed to his wife a quitclaim deed to this quarter section of land, the consideration recited being "one dollar, love, and affection." The title to this land at all times until this deed was made by Brinten Sharp to his wife was in his name. The land had been sold by him on contract to one Carlson, who was unable to carry out his contract, which by mutual agreement was rescinded. This occurred in 1922. On the 8th of September, 1922, Anna Sharp quitclaimed this land to her husband, reciting, as a consideration, "one dol-

lar, love, and affection." She explains this deed by claiming that it was deeded to her husband, to the end that he would be in position to forfeit or make settlement with Carlson on the contract that he (the husband) had with Carlson for the sale of this land. The title stood thus until the 30th of June, 1924, when Brinten Sharp executed a warranty deed to his wife, Anna Sharp, for the same.

In 1918, Brinten Sharp went to Texas, where he bought a tract of 31 acres of land at $325 per acre, on which he paid $1,000,—evidently all his own money. This seems to have been against the wife's wishes; but after he had made the deal, she drew her money from the bank and sent it, to complete the transaction. There is no claim that this money was sent under an agreement to repay, nor is there any claim that the husband was to pay interest thereon. The record is silent as to whose name the title was taken in, nor does the record show the final disposition of the same. The wife insists in her testimony that in all of these transactions she was a "copartner," except possibly in the Texas land. By this term we assume that she meant that she was jointly interested in all of these transactions. She says in her testimony:

"I thought I was in partnership with my husband all the time. That was the agreement, and I was the same as a partner, and had a half interest. My husband thought that we were to own the property jointly, although it was in my name. That was my understanding all of these years: although the title would be in his name, the property would in fact be owned by us jointly; that I should have a full partnership with him in every piece of property he took in his name,—but I didn't have anything to do with the Texas land. The other pieces of property, I understood from the arrangement with my husband, were half mine and half his."

If it be assumed that her contention in this respect is true, that she was the owner of a half interest in this property prior to 1922, when the first deed was made to her by her husband, the question then is whether or not plaintiff's contention is true, that, when he bought these notes, he was aware of the fact that the title to this property was in Brinten Sharp's name, and relied thereon in the purchase of the notes. This is one of the

2. HUSBAND AND WIFE: conveyances: non-estoppel against wife.

disputed questions in the record. Sharp and his wife both testi-
fied that, on different occasions before plaintiff bought the notes
on which the judgment was rendered, as heretofore recited, they
advised him that she was the owner of this property. This
knowledge Jordan denies, and says that, if any such statements
were made in his presence, he did not hear the same, because he
was afflicted with deafness.

This matter, however, raises a wholly false issue. It is to
be remembered that, when Jordan bought this note, in 1919, he
had no dealings whatever with either of the Sharps. He did not
extend credit to them, and since he purchased the note from a
third party, the fact (if it be a fact) that the wife owned this
property, but allowed the title to remain in her husband, could
not operate as an estoppel, because neither of the Sharps was
making any representations to him as to the title to said proper-
ty, and they were not inducing him to part with anything to
them or to extend credit to either of them. Under these cir-
cumstances, the plaintiff was not entitled to avail himself of
these facts,—if they be facts,—as a basis for an estoppel against
the wife. That a creditor may take security for debts due him
even though he is aware that the purpose of the debtor in giving
it is to injure, delay, and defeat and thus defraud other creditors,
is well recognized in this state. See *Chase, Merritt & Blanchard
v. Walters,* 28 Iowa 460; *Kohn Bros. v. Clement, Morton & Co.,*
58 Iowa 589; *Southern White-Lead Co. v. Haas,* 73 Iowa 399;
*Richards v. Schreiber, Conchar & Westphal Co.,* 98 Iowa 422.
But, if the creditor knows of the fraudulent purpose of the
debtor and accepts the mortgage wholly or in part to aid in ac-
complishing it, he participates in the wrong, and the mortgage
is fraudulent against creditors although it was only on a reason-
able amount of property to secure a valid debt. *Headington v.
Langland,* 65 Iowa 276; *Crawford v. Nolan,* 70 Iowa 97; *Mc-
Creary v. Skinner,* 83 Iowa 362; *Clark v. Raymond,* 86 Iowa 661;
*Richards v. Schreiber, Conchar & Westphal Co.,* supra.

If the indebtedness existed, as claimed by Mrs. Sharp, she
had the same right as any other creditor to secure or receive
payment of said indebtedness by this conveyance, provided that
she did not participate in the intent on the part of the husband
to defraud creditors. This is one of the cases where, although
we are not bound by the decision of the lower court, in view of

the disputed facts in the case we are disposed to hold that there was a fair consideration for this deed, and that it was not made in fraud of creditors.

Viewing the transaction as a whole, we feel that the decision of the district court was right, and the judgment is affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, DE GRAFF, VERMILION, MORLING, and KINDIG, JJ., concur.