O. F. MELTZER, Administrator, Appellee, v. JOHN SHAFER et al., Appellants.

No. 41560.

October 25, 1932.

Rehearing Denied February 14, 1933.

O. H. Montzheimer and Kopp & Brunckhorst, for plaintiff and cross-petitioner, appellees.

Maher & Meloy and O. E. Johnson, for defendants-appellants, John Shafer and Johanna Shafer.

Kindig, J.—John Shafer, a defendant-appellant, in the year 1920 owned 320 acres of land in O'Brien County, Iowa. Johanna Shafer, a defendant-appellant, was then and now is the wife of the aforesaid appellant John Shafer. On or about the 26th day of August, 1920, the appellant John Shafer became seriously ill, and underwent a major operation for the purpose of removing gall stones. Fearing that the operation might prove fatal, the appellant John Shafer, on the day before, to wit, August 25, 1920, without consideration, transferred the aforesaid land to his wife, the appellant Johanna Shafer. Although John completely recovered from the operation, his wife Johanna did not re-deed the aforesaid land to him.

After the deed was signed and acknowledged by the appellant John Shafer, it was kept in a safe at the Shafer home without being recorded until October 6, 1928. For approximately eight years, then,

the appellant Johanna Shafer secretly held title to the land while her husband had actual possession thereof, paid taxes on, and otherwise managed and controlled, the farm. Mrs. Shafer knew that deeds were recorded, and she worried, when thinking of her husband's debts, as to whether the instrument in question should not be placed on record. Apparently she kept the deed from record for fear "everybody would know about it." According to the record, the business world understood that the land belonged to the appellant John Shafer during the eight-year interim above mentioned. The appellant Johanna Shafer finally placed the deed of record, according to her own testimony, for the purpose of "doing something so" she "would have something" for herself.

Paul Shafer, a son of the appellants', married the daughter of John D. Harms, the cross-petitioner and appellee. Following Paul's marriage, he lived on appellants' farm as a tenant. These farming operations were not profitable to Paul, and he became heavily indebted. On March 1, 1922, Paul owed a bank at Calumet over $5,000. This debt of $5,000 was evidenced by a promissory note signed by Paul, as the principal maker, and by his father as surety. After the $5,000 note became due, the Calumet Bank, sometime before March 1, 1922, urged that Paul Shafer and his father, the appellant, pay the same. Neither Paul nor his father, the appellant, had the available cash with which to satisfy the obligation at the Calumet Bank. Hence it was necessary that money be borrowed to pay the debt. Accordingly Paul Shafer appealed to his father-in-law, John D. Harms, the appellee. Thereupon the appellee Harms commenced negotiations to procure for his son-in-law, Paul Shafer, the necessary funds with which to satisfy the Calumet Bank obligation.

In the first place, the appellee John D. Harms visited the Shafer farm, looked it over, and spent some time there. Fully believing that the farm belonged to the appellant John Shafer, the appellee John D. Harms went to Platteville, Wisconsin, where he sought to borrow the money on behalf of his son-in-law Paul Shafer from private individuals living at that place. As a result of these efforts on the part of the appellee John D. Harms, two loans were negotiated for March 1, 1922, aggregating $6,000. $4,000 of the total amount was borrowed from Mary Scheel, who is now dead, and O. F. Meltzer is the duly appointed administrator of her estate. He appears in the present proceeding as the plaintiff-appellee. $2,000 of the afore-

said amount was obtained from Charley Nodolf. Both loans were procured with the belief and representations on the part of the appellee John D. Harms that the appellant·John Shafer, as well as his son Paul, would sign the notes. Likewise it was represented and understood by the appellee John D. Harms that John Shafer owned the half section of land in question. John Shafer, the appellant, had previously so informed Harms, the appellee.

Mary Scheel and Charley Nodolf both believed and understood, when advancing the money to Paul Shafer, that his father, the appellant John Shafer, owned the half section of land and would sign the notes. Also it was understood by Mary Scheel and Charley Nodolf, respectively, that the appellee John D. Harms would sign the notes as surety. While it is suggested by the appellants that the money was advanced to Paul Shafer before the appellee John D. Harms signed the notes as surety, yet the record clearly reveals that both Mary Scheel and Charley Nodolf contemplated said appellee's signature on the respective instruments before either loaned the money. Each note here involved was signed on March 1, 1922, by Paul Shafer, his father, the appellant John Shafer, and John D. Harms, the appellee. Paul Shafer used the proceeds of the loans thus procured by the appellee John D. Harms for the purpose of satisfying the aforesaid obligation at the Calumet Bank. The aforesaid notes payable to Mary Scheel and Charley Nodolf were due one year after March 1, 1922. Neither note, however, was paid when due. Whether the time of payment thereof was extended, does not appear. At least the payees appear not to have urged payment until a short time before the deed in question was placed of record. Johanna Shafer, the appellant, learned of the Scheel and Nodolf notes two or three days after they had been executed by her husband.

In August, 1928, Scheel and Nodolf demanded that John Shafer pay the two notes above mentioned. Upon learning of this, the appellant Johanna Shafer recorded the deed in question. John D. Harms, the appellee, paid the $2,000 note to Charley Nodolf because he was surety thereon. Later the appellee John D. Harms sued the co-maker John Shafer for contribution, and obtained a judgment against him for $1,309.80, plus costs. Subsequently judgment in behalf of Mary Scheel was obtained against the appellant John Shafer on the $4,000 note. An execution issued on each of these judgments, and both were returned by the sheriff with the notation thereon "nothing found."

Consequently O. F. Meltzer, as administrator of the Mary Scheel estate, commenced this action against the appellants John Shafer, Johanna Shafer, and the appellee John D. Harms, to set aside the aforesaid deed to the half section of land made, as before explained, by the appellant John Shafer to his wife. That relief is asked on the theory that the appellant Johanna Shafer is estopped from claiming the land as against the appellees because she did not place the aforesaid deed on record, but held out to the world that the farm was owned by her husband. John D. Harms, the appellee, filed a cross-petition in the above-named suit, likewise asking that the said deed be set aside on the same theory and that the farm be subjected to the payment of both judgments above named. This relief was granted by the district court, and John Shafer and Johanna Shafer, the appellants, both appeal.

A gift may legally be made by a husband to his wife if he has no creditors who, in law or equity, can rightfully complain. Bolton v. Bailey, 122 Iowa 729. If the appellant Johanna Shafer did not expressly or by implication hold out to the world that her husband owned the land in question, even though others, without her knowledge or consent, express or implied, did so, she, of course, is not estopped from claiming it as her own. White v. Graybill, 184 Iowa 897; Macheak v. Adamsen, 214 Iowa 446.

"It is essential to estoppel in such a case that the wife should know, or that the circumstances should be such that she ought to know, that others were or might be dealing with the husband to their prejudice, in reliance upon his apparent ownership." Farmers State Bank v. Schleisman, 203 Iowa 585 (local citation 586-7).

See, also, Brundage v. Cheneworth, 101 Iowa 256.

Moreover, before it can be said that the appellant Johanna Shafer is estopped, as against the appellees, from claiming the land in question, it must appear that her action in keeping the deed from record and permitting her husband actually to occupy, manage, and control the land, induced the appellees to extend the credit in question. DeVore v. Jones, 82 Iowa 66; King v. Knudson, 209 Iowa 1214 (local citation 1217); Jordan v. Sharp, 204 Iowa 11; Watt & Co. v. Mercer, 170 Iowa 166. See Parnell Savings Bank v. Shuell (Iowa) 195 N. W. 247 (not officially reported).

In the case at bar, however, the appellant Johanna Shafer intentionally kept the deed (voluntarily given her by her husband

without consideration) from record during a period of approximately eight years. Throughout that period she knew that her husband was gaining credit in the commercial world on the theory that he owned the half section of land in question. Mrs. Shafer, it fairly appears from the record, understood that if she recorded the deed her husband would not be able to obtain credit. According to the public records, he did own the land. Not only that, but in the community it appears generally to have been understood by business men that the appellant John Shafer owned the 320-acre tract. He had actual possession of the premises, paid the taxes thereon, and generally managed the business relating to the farm. Upon one occasion, John Shafer, the appellant, for his own purposes borrowed money on the land and the appellant Johanna Shafer signed the mortgage, not as owner of the property, but as the wife of the grantor, for the purpose of conveying her distributive share and homestead rights.

Johanna Shafer understood that deeds generally were placed of record. Her deed, however, was not placed of record because she did not desire everybody to know about the transfer. There was some nervousness on the part of Mrs. Shafer about keeping the deed from record. She apparently feared, on the one hand, that a recording of the deed woud affect her husband's credit, and, on the other hand, she was anxious about her own security without a recorded instrument. Finally she became startled because creditors under the indebtedness in question were assuming threatening attitudes. Because of the threatening creditors, she indicates, the deed was finally recorded. There is some dispute in the record as to just what the appellant Johanna Shafer intended to say in reference to her knowledge of her husband's transactions, yet, when the whole record is considered, it fairly appears that the recitals here given are substantially correct. Reliance was made upon the credit of the appellant John Shafer by Mary Scheel and Charley Nodolf when the money was advanced. Those creditors believed that John Shafer owned the land in question and were induced by that belief in his ownership thereof to loan the money before named. John Shafer, the appellant, had informed the appellee Harms that the former owned the land, and the latter in turn imparted the information to Mary Scheel and Charley Nodolf. Under all the circumstances, as will appear from the following discussion, it is manifest that the

appellant Johanna Shafer is estopped from claiming, as against the appellees, the land under the unrecorded deed.

At this juncture, a quotation from one of our decisions will explain the rule involved. In Levi v. Levi, 156 Iowa 297, reading on pages 303-4, this court said:

"One who takes title by a secret voluntary conveyance and allows his vendor to remain in apparent ownership of the property conveyed, which is in good faith made subsequently the basis of extending credit to such grantor, can not, as against the subsequent creditor misled, insist that he has a higher claim to the property than the creditor. A court of equity will subject such property to the satisfaction of the creditor's valid claim. This rule seems to be so fundamental that a reference to general statements by text-writers collecting the authorities bearing on the subject is sufficient. * * * It is immaterial that the vendee had no fraudulent intent in accepting the conveyance. He is not entitled to give it a fraudulent effect by asserting his title as against a creditor who has in good faith made advances in reliance on the apparent title of the grantor."

For cases supporting the foregoing pronouncement, see Long v. Duncan, 186 Iowa 126; Browning v. Kannow, 202 Iowa 465; Farmers' Savings Bank v. Pugh, 204 Iowa 580. "It is immaterial" in such cases "whether or not intentional fraud is shown." Hospers v. Watts, 209 Iowa 1193; Levi v. Levi (156 Iowa 297, 303), supra See also Helwig v. Fogelsong, 166 Iowa 715.

Mrs. Shafer, the appellant in the case at bar, understood her husband's transactions. He talked his business affairs over with her. Perhaps she did not know that the present loans were going to be made before the transaction was closed. But, on the other hand, this appellant knew that her husband was in debt. Likewise, she understood that he was gaining credit in the business world on the belief that he owned the farm. An extensive quotation from McCormick Harvesting Machine Co. v. Perkins, 135 Iowa 64, reading on page 68, states the law applicable to an analogous state of facts:

"* * * It * * * appears that, for twenty years, the land, while belonging to Mrs. Perkins, was allowed to stand in her husband's name and to be held by him in secret trust for her benefit. He (the husband) occupied the premises and treated them in all respects as his own and the evidence is without dispute that credit

was extended to him by plaintiff in reliance upon such ownership. It would be inequitable to permit his wife, after allowing him to obtain credit upon the apparent ownership of this property for so long a time to set up a claim thereto against the creditors who had trusted him in reliance upon such ownership. She must be presumed to have known that, in the ordinary course of business, he would be likely to obtain credit by reason of his ostensible ownership, and, having consented that the land stand in his name, she ought not to be heard to say, as against those extending credit in reliance on the security which she permitted him to hold out, for the purpose of defeating the collection of the indebtedness, that she, rather than he, owned the property. These principles are recognized in practically all the authorities."

Under all the record, then, in the case at bar, it is manifest that the appellant Johanna Shafer is estopped from claiming the land as against the judgments of the appellees.

Wherefore, the judgment and decree of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, C. J., and EVANS, FAVILLE, ALBERT, and BLISS, JJ., concur.