E. A. Rinehart, *Receiver, v.* J. Lee Hall *et al.*

(No. 8306)

Submitted April 8, 1936. Decided April 28, 1936.

*Frank C. Haymond, Martin & Seibert* and *Harrison & Harrison,* for appellant.

*Rollo J. Conley* and *Clay D. Amos,* for appellee Hattie M. Hall.

*H. H. Rose,* for E. A. Rinehart, receiver.

Kenna, Judge:

E. A. Rinehart, receiver of the Farmers & Merchants

Bank of Fairview, brought this suit in the Circuit Court of Marion County against J. Lee Hall and Hattie M. Hall for the purpose of setting aside as voluntary and fraudulent a certain deed dated October 17, 1919, from J. Lee Hall and Hattie M. Hall, his wife, to T. Wilbur Hennen and a certain other deed of even date from T. Wilbur Hennen and Nellie A. Hennen, his wife, to Hattie M. Hall, each conveying residential property in the City of Fairmont occupied by the defendants, in so far as a certain indebtedness of J. Lee Hall to the Merchants Bank of Fairview, amounting in the aggregate to $3,000.00, with interest, was concerned, and to subject the land conveyed to the payment of that debt. J. Lee Hall and Hattie M. Hall filed separate answers and proof was taken. On June 27, 1935, the court decreed that the conveyances under attack were fraudulent as to the plaintiff's debt, set them aside, and ordered that the real estate conveyed be sold in satisfaction of the plaintiff's claim.

On June 25, 1935, the petitioner and appellant, J. H. Yost, cashier, filed his petition alleging that on the 18th day of September, 1934, he had recovered a judgment against the defendant, J. Lee Hall, and one H. Delmar Robinson in the District Court of the United States for the Northern District of West Virginia in the sum of $4,898.35, with interest and costs, and that an abstract thereof had been filed in the office of the clerk of the county court of Marion County, West Virginia, on the 24th day of September, 1934. The petition alleges that no part of the judgment has been paid, that the conveyances of real estate set out in the bill of complaint are fraudulent, voluntary and void in so far as the debt of the petitioner is concerned, adopts the allegations of the bill of complaint, in so far as they are applicable, as the allegations of the petition, and prays the right to intervene and be made a party plaintiff to the suit in order that the claim set up by the petition may be adjudicated, and the conveyances under attack held to be voluntary, fraudulent and void as to the petitioner's judgment. On the day the decree of sale was entered, June 27, 1935,

the court refused a motion to continue the case without the entry of a decree of sale for two days in order that further appearance on behalf of petitioner could be made. On June 29, 1935, the motion of petitioner to vacate the decree of sale entered June 27, 1935, and that he be made a party plaintiff, was overruled by the court. At the same time, the motion of petitioner that process be awarded on his petition and a hearing be had thereon was taken under advisement. On July 6, 1935, the motion for process was granted and the motion to vacate the final decree so that the claim set forth in the petition could be adjudicated was overruled. The petitioner, J. H. Yost, cashier, prosecutes this appeal to the orders of June 27th, June 29th and July 6, 1935, contending that it was error for the trial court to decree a sale of the property without first adjudicating the claim set up in the petition.

The defendant, Hattie M. Hall, assigns cross-error on the ground that the record shows that there was insufficient proof upon which to decree that the deeds under attack were voluntary, fraudulent and void as to her interest in the property conveyed, and on the further ground that in any event, she should have been decreed an equitable lien in the sum of approximately $6,000.00 against the property to protect her in the value of certain improvements that she made upon the property prior to its conveyance to her, which were, she contends, the consideration for the conveyance.

We are of the opinion that the principles enunciated in *Murdock, Admr.* v. *Welles,* 9 W. Va. 552, and in *Dent* v. *Pickens,* 50 W. Va. 382, 40 S. E. 572, as reaffirmed in the recent case of *Wilt* v. *Shaffer,* not yet reported, (117 W. Va. 291, 185 S. E. 237), govern the questions arising upon the petition of Yost, cashier. The petition of Yost had been received and filed two days before the decree of sale was entered. His claim was before the court. It is true that he had not, by order, actually been made a party plaintiff. Neither had there been process upon his petition. His judgment had been docketed in the county clerk's office of Marion County before this suit was

brought. Under these circumstances, his claim was before the court in such manner as to require final disposition and adjudication in the case. This suit was brought on behalf of the plaintiff and on behalf of all other creditors of J. Lee Hall who would come into the case and contribute their part of the cost. Under a similar state of facts, we held in *Wilt* v. *Shaffer*, that it was error to decree sale of land without adjudicating the petitioner's claim. It is true that in the *Wilt* case, the court had actually adjudicated that the petitioner there was entitled to share in the proceeds of the sale, and that the conveyances under attack were fraudulent as to the petitioner's claim. The claim itself had not been actually adjudicated, nor had its priority been fixed.

In the case at bar, the petition alleges that the conveyances attacked by the bill of complaint are voluntary, fraudulent and void as to petitioner's claim, and, in so far as they are applicable, adopts the averments of the bill of complaint. It cannot be doubted that in a suit of this nature, this was sufficient to place the claim of the petitioner properly before the court. It is argued that the case had been submitted for decision and had actually been decided by the court upon the basis of the bill, answer and proof before the petition was presented, and that a decree in conformity to the court's holding had actually been prepared before that time. In the absence of a showing of laches against the petitioner's claim, which, we believe, does not exist in this record, these circumstances, while perhaps resulting in serious inconvenience and in some delay, are not sufficient to furnish ground upon which to base an exception to the general rule that the amounts and priorities of the claims properly before the court must be adjudicated before land can be decreed to be sold to satisfy indebtedness of the owner.

On the cross-assignment of error urged by the defendant, Hattie M. Hall, the appellant contends that since its appeal is restricted to the decrees of June 27th, June 29th and July 6, 1935, that the cross-assignments of error are necessarily so restricted, and that to permit

the defendant below to cross-assign error beyond those decrees would be equivalent to enlarging this appeal beyond the scope of the petition. To sustain his position in this regard, the petitioner cites *Allen & Co.* v. *Maxwell*, 56 W. Va. 227, 49 S. E. 242; *Sulzberger Co.* v. *Fairmont Packing Co.*, 86 W. Va. 361, 103 S. E. 121; *Vaughan* v. *Vaughan*, 101 W. Va. 561, 133 S. E. 158; and certain other cases bearing only collaterally upon the point involved.

The cases cited by petitioner are ones in which either the appeal or the writ of error before the court, or the record as made up on review, were restricted to specific points. The petitioner contends that the petition for an appeal was restricted to the matters arising upon the intervening petition in the case at bar, and it may have been the purpose to restrict the appeal before us to the questions arising upon the refusal of the trial court to adjudicate petitioner's claim. However, in the light of the actions of the trial chancellor that are complained of, and in the light of the language used in the petition for the appeal, we are of the opinion that with respect to the decree of June 27, 1935, this appeal may not be treated as restricted and confined only to the matters arising upon the petition filed by petitioner in the court below, and to such cross-error as may be assigned upon the trial court's action concerning that petition. The assignments of error and the prayer of the petition for an appeal are quoted:

> "Your petitioner assigns as error the entry by the Court of the decrees herein on the 27th day of June, 1935, on the 29th day of June, 1935, and of July 6th, 1935, insofar as each of them prejudices the right of the said J. H. Yost, Cashier, to have a hearing and judgment upon the petition filed herein by him on the 25th day of June, 1935.
>
> "For the foregoing and other errors in the decrees and record complained of, your petitioner prays an appeal from and a supersedeas to the said decrees, and that each of them may be reviewed and reversed."

It will be observed that the prayer of the petition is for an unrestricted appeal and supersedeas to the three decrees complained of and that each of them may be reviewed and reversed, not in part, but in toto. Furthermore, the prayer recites that the appeal, if granted, is to be "for the foregoing *and other errors* in the decrees *and record* complained of." (Emphasis supplied.) Upon this petition, the entire record of the cause in the trial was made up and brought to this court. From the record, it appears that in the trial court, the petitioner moved on June 29, 1935, that the decree of June 27, 1935, be vacated and annulled in toto. The refusal of the trial court to so vacate that decree is one of the very errors assigned by petitioner in his petition for an appeal filed in this court. We are therefore of the opinion that since the appeal is not restricted with respect to the decree of June 27, 1935, and since the entire record is properly before this court, the defendant below, Hattie M. Hall, is clearly within her right in assigning cross-error as to the entry of that decree.

The first cross-assignment of error on the part of Hattie M. Hall is to the effect that the evidence is insufficient to show that the deeds made by J. Lee Hall in 1919 through an intermediary to her were voluntary and fraudulent as to her. She contends that the proof shows that J. Lee Hall was solvent when these deeds were executed in 1919; that she paid a valuable consideration for the transfer to her; and that the failure to record the deeds, being an act subsequent to the making of them, did not affect the validity of the deeds when they were made and, furthermore, that the withholding of the deeds from record was, on her part, an act done without intention to deceive or mislead anybody.

In so far as the consideration is concerned, the proof tends strongly to show that Mr. and Mrs. Hall agreed sometime prior to October, 1919, that their dwelling was badly in need of repair and that Mrs. Hall should, from her own funds, pay the cost of remodeling and renovating the house in return for which Mr. Hall was to cause the title, theretofore in him, to be vested in Mrs. Hall.

The repairs were made at a cost, as claimed by Mrs. Hall, of approximately $6,000.00 which she paid. This was before the transfers were made. The two deeds, the first from Mr. and Mrs. Hall to the intermediary, and the second from the intermediary and his wife to Mrs. Hall, were drafted on or before October 17, 1919, and, apparently, were signed on that day. The first was acknowledged in the following January and the second in the following February. We cannot see how it is possible for such an arrangement to be regarded as a valuable consideration for the conveyances in question. The arrangement contemplated that Hattie M. Hall was to be vested with title to the property. Making repairs upon property owned by herself, or contemplated to be immediately vested in her, could scarcely be regarded as a valuable consideration moving to any other person. Mrs. Hall, herself, was to get the full value and benefit of doing the thing that she claims was the consideration for the conveyance to her. Neither do we see how it can successfully be contended that the arrangement contemplated the doing by Mrs. Hall of an act that would result in detriment to her, no matter whether the consideration moved to another person or not, and would thus constitute a consideration deemed valuable in law. No detriment could result to Mrs. Hall from the expending of her funds upon property of her own as long as the deed stood and the title in her remained valid, which, of course, was contemplated by the agreement. So we are obliged to conclude that the conveyances from J. Lee Hall to his wife, Hattie M. Hall, through the intermediary were without a consideration deemed valuable in law.

But J. Lee Hall, while solvent, could make a valid gift of this sort to his wife. The record shows that he was undoubtedly solvent at the time. The record fails to disclose that either he or Mrs. Hall at the time the conveyances were made intended to withhold them from record and thus to deceive persons who might, on the faith of his apparent ownership appearing upon the public records, extend credit to J. Lee Hall. We are of the opinion that this record does not disclose circumstances that

would have warranted the trial chancellor in holding that the deeds of 1919 were, with respect to any creditors of J. Lee Hall, invalid when made.

But we are of the opinion that this is not the principle upon which this case must be decided. We must, of course, bear in mind the difference between the rights of existing or prior creditors, and those of subsequent creditors. A deed can hardly be said to be inoperative as to the rights of subsequent creditors at the time it is made, because those rights are not in existence at that time. Nevertheless, under the doctrine of estoppel, a deed, valid when made, may be held inoperative as to the rights of subsequent creditors, where to hold otherwise would be to sanction the perpetration of a fraud upon them. It is not a question of whether these deeds were invalid when they were executed. The question is whether, in the light of all the circumstances shown by the record, Hattie M. Hall is not now estopped to deny the ownership apparently in J. Lee Hall as was shown by the public records. The appellee, on this assignment of error, relies upon the rule laid down in *Smith* v. *Gott, Admr.,* 51 W. Va. 141, 41 S. E. 175, to the effect that the wife is not estopped from setting up her equitable title to land which stands in the name of the husband as against creditors of the husband unless it appear that with her knowledge credit was extended to the husband on the faith of his apparent ownership of the land. This case involved the rights of existing creditors. The appellee says that there has been no proof of knowledge on her part that credit was extended to her husband upon the faith of his apparent ownership of the property conveyed by the deeds under attack. While it may be true that this state of facts would bring the case before us within the literal statement of the rule contained in the third point of the syllabus of the *Gott* case, we are of the opinion that the rule there enunciated must be applied with some qualification. We do not think that the actual knowledge of the wife of the fact that credit was extended to the husband upon the faith of his apparent ownership of the land need to be shown by direct testimony. It may be

shown circumstantially and if the circumstances are strong enough to show that the wife should have known that credit was being extended to the husband upon the faith of his apparent ownership, she cannot, by her bare denial of that knowledge, avoid the application of the rule. Business transactions between husband and wife that adversely affect the rights of third persons are to be scrutinized with extreme care. To require a direct showing of *actual knowledge* on the part of the wife of the fact that the husband was misleading others to extend credit to him upon the faith of his record ownership of property in reality owned by the wife, would mean that fraud would be permitted to succeed except in those cases where its methods were extremely clumsy. To hold that it is sufficient if the wife ought to have known that credit was being so extended to the husband is but another way of saying that there need not be direct proof of actual knowledge, that it may be shown by circumstantial evidence and that circumstantial evidence of that fact is sufficient to overcome the bare denial of the husband and wife. We believe that these principles are fairly deducible from the following cases: *Meltzer* v. *Shafer,* 215 Ia. 785, 244 N. W. 851; *Terrell* v. *Wheeler-Motter Mercantile Co.,* 147 Okl. 77, 294 Pac. 644; *Slinger* v. *Sterrett,* 283 Ill. 82, 118 N. E. 1008; *Feig* v. *Meyers,* 102 Pa. 10; *Grant* v. *Cherry,* 199 Ia. 164, 201 N. W. 588; *German Insurance Co.* v. *Bartlett,* 188 Ill. 165, 58 N. E. 1075, 80 Am. St. Rep. 172; *Ellis* v. *Thompson,* (Mo. Sup.) 264 S. W. 804; *Culp* v. *Kiene,* 101 Kan. 511, 168 Pac. 1097; *Long* v. *Duncan,* 186 Ia. 126, 172 N. W. 163. See also *Farmers' State Bank* v. *Schleisman,* 203 Ia. 585, 213 N. W. 211, 52 A. L. R. 182, and note; *Goldberg* v. *Parker,* 87 Conn. 90, 87 Atl. 555, Ann. Cas. 1914C, 1059 and note; see also for a general statement of the rule 10 R. C. L. 743. It is, of course, essential to the application of the rule that it appear that the creditors who seek to assert their claims against the land extended credit upon the faith of the husband's apparent ownership. *Standard Mercantile Company* v. *Ellis,* 48 W. Va. 309, 37 S. E. 593. We are of the opinion that there is sufficient evidence in

this record to justify a holding on the part of the trial chancellor that that fact is established in the case at bar.

As will appear from an examination of the cases already cited, it is held in some jurisdictions that the mere fact that deeds vesting title in the wife are withheld from the public record so that those records show an apparent title in the husband, coupled with the fact that credit is extended to the husband upon the faith of his apparent ownership, is sufficient to estop the wife from asserting her real title. The rule in this jurisdiction, however, does not appear to have been so broadly stated. Here, it is necessary to show some circumstances from which it may at least be inferred that credit was extended to the husband on the faith of his apparent ownership with the knowledge of the wife; or that the circumstances were such as to warrant a holding that the wife should have known that credit was being extended to the hubsand on the faith of his apparent ownership. The question, then, for decision in this case is whether the decree of the trial chancellor is to be reversed because his finding that the wife knew, or should have known, that credit was being extended to the husband upon the faith of his apparent ownership, is clearly wrong. This record shows a vagueness and indefiniteness in the recollection of both Hattie M. Hall and J. Lee Hall as to the circumstances attending the execution and delivery of the deeds in question. T. Wilbur Hennen, who acted as the intermediary, had died before this suit was brought. Mrs. Hall entrusted Mr. Hall with all of the legal matters attending upon the transfer. This, presumably, would include the matter of recordation. The testimony does not show whether the deeds came immediately into the possession of Mrs. Hall or not. At the time that they did come into her possession, they were placed by her in a box which she kept in her closet. Later, they were removed to a safety deposit box at the bank, which was in the joint names of Mr. and Mrs. Hall. Still later, they were removed from the safety deposit box, and were later still placed of record. The recordation did not take place until after Mr. Hall had become acute-

ly involved. Mrs. Hall, on at least one occasion discussed with Mr. Hall the question of recording the deeds and, while she says that she simply neglected to record them, at another point in her testimony she explains that the reason she did not record them was because she did not think that they should be recorded until she had discharged the indebtedness she incurred for the purpose of remodeling and making the repairs upon the dwelling. This statement would make it appear that Mrs. Hall did not want the title to appear in her name because of the fact that she herself was indebted. At any rate, it appears that Mrs. Hall did know the purpose of public recordation; that she did know that credit was likely to be extended to her husband on the faith of his apparent ownership; that she did know that the title upon the tax books appeared in her husband's name and that he was paying all of the taxes upon the property, sometimes with money furnished by her to him; and that at least upon the occasions when Mrs. Hall changed the place that she was keeping the deeds, the fact that they were not recorded was brought to her attention. There was ample proof to justify a finding that credit was extended to the husband on the faith of his apparent ownership and that the transfer to the wife was without consideration. We are of the opinion that under the circumstances shown, we cannot say that the decree of the trial chancellor was wrong if it found that the circumstances were such that Mrs. Hall should have known that credit was being extended to her husband upon the faith of the apparent ownership in him of the property in question. That being so, on this question, the decree must be affirmed.

The second cross-assignment of error relates to Mrs. Hall's claim of an equitable lien to the extent of approximately $6,000.00 to protect her in the value of the improvements that she put upon the property. We are of the opinion that the same principles which would estop Mrs. Hall from asserting her title as against the apparent owership of her husband upon the faith of which credit was extended to him, also estop her from

asserting, as against his creditors, that she is entitled to reimbursement for the improvements.

Inasmuch as we do not believe that this case properly proceeds upon the theory that the deeds in question were made for the purpose of hindering, delaying and defrauding the creditors of J. Lee Hall, but that the correct theory is that Hattie M. Hall is estopped to deny the ownership of her husband, under all of the circumstances of the case, and to assert her title as against his creditors, we have had some difficulty on the question of whether, under the allegations of the bill, a case upon the latter theory may be sustained. After careful consideration, however, we are of the opinion that the bill of complaint in fact is sufficient for that purpose. The bill alleges the fact that the deeds were withheld from record by J. Lee Hall and Hattie M. Hall for the purpose of defrauding the plaintiff, and that the withholding from record resulted in the accomplishment of that purpose. The prayer of the bill is that the deeds may be set aside and held for naught as to the claims of the plaintiff. Although the bill of complaint does not proceed upon the theory of estoppel and was framed upon a different theory, we, nevertheless, are of the opinion that its averments are sufficient to sustain the case made out.

Upon the basis of the foregoing discussion, the decree of the Circuit Court of Marion County is reversed in so far as it directed a sale of the land without an ascertainment of the amounts and priorities of claims against it that were properly before the court, and is affirmed in so far as it held the two deeds in question did not pass the title to Mrs. Hall as against the claims of the plaintiff.

*Reversed in part; affirmed in part; remanded.*